660 P.2d 1243
**STATE of Arizona, Appellee,**
v.
**Jose Albert MARQUEZ, Appellant.**
**No. 1 CA–CR 5594.**

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 27, 1983.

Rehearing Denied Feb. 15, 1983.

Review Denied Mar. 8, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Kemper & Henze by Don Bennett Moon, Phoenix, for appellant.

## OPINION

EUBANK, Judge.

Appellant appeals from a jury verdict finding him guilty of one count of armed robbery. He was sentenced to a term of seven years in the Arizona State Prison.

Appellant became a suspect in the armed robbery while he and his two companions were being "booked" at Chandler City jail charged with unlawful use of means of transportation, A.R.S. § 13–1803.

Prior to trial, appellant moved to suppress certain statements he had made while in custody. He argued that his arrest under A.R.S. § 13–1803 was not supported by probable cause and, therefore, statements obtained after this "illegal arrest" should have been suppressed. On appeal, he argues that the trial judge's denial of his Motion to Suppress was error.

The following facts appear from the record: At approximately 9:15 p.m. on February 17, 1981, Officer Lang, Arizona Department of Public Safety (DPS), was operating radar at mile post 167 along Interstate 10, near Phoenix, when an automobile passed his checkpoint at a speed of 75 miles per

hour. The officer gave chase and eventually stopped the car at approximately mile post 165. At that time, the officer asked the driver, Jesus Meraz, to step out of the vehicle, which he did. When asked for his driver's license and registration, Mr. Meraz was unable to produce either. Meraz, however, told the officer that he was the owner of the vehicle and that he had just purchased the car in Coolidge. The officer ran a driver's license and registration check. There was no record on Meraz's driver's license and the vehicle was reported stolen from Phoenix.

Appellant and Rafael Reyes were passengers in the vehicle.

After being informed at approximately 9:25 p.m. that the vehicle was stolen, Officer Lang patted Meraz down, handcuffed him and advised him of his rights. After he was arrested, the officer began reading him his rights, and Meraz developed difficulty speaking English.

Sometime between 9:15 p.m. and 9:25 p.m., Officer Lang was assisted by Officer Christie, DPS, who had arrived on the scene. When asked by defense counsel, at the Motion to Suppress, whether he had arrested the two passengers when he was advised that the car was stolen, Officer Lang stated that he had not. He stated that Officer Christie, who came to assist him, placed the two passengers under arrest. Officer Christie arrived on the scene just before Officer Lang was notified that the vehicle was stolen.

Officer Christie testified that he attempted to converse with appellant and Reyes, but was unable to do so. Appellant spoke no English at all during the stop. Officer Christie did not search either of the passengers during his initial questioning. Neither had any identification.

## PROBABLE CAUSE TO ARREST

On appeal, as in the court below, appellant argues that his mere presence in a stolen automobile was not enough to justify his arrest for unlawful use of means of transportation, pursuant to A.R.S. ·§ 13–1803. In support of his argument, appellant relies on *State v. Hansen,* 117 Ariz. 496, 573 P.2d 896 (App.1978). The court in *Hansen* held that where a police officer observed the defendant sitting next to another person who was smoking marijuana, on a public park bench, he did not have probable cause to arrest the nonsmoker. Appellant contends that he is in the same position as the defendant in *Hansen, supra.* We do not agree. The court in *Hansen* found that the activities engaged in by the defendant in that case did not demonstrate any type of joint activity. The court observed that the evidence showed merely that the defendant was sitting on a public park bench and the objective facts in no way indicated his complicity with or support of an illegal act being engaged in by another.

It is axiomatic that probable cause to effect an arrest exists where the arresting officer has reasonably trustworthy information of facts and circumstances which are sufficient to lead a reasonable man to believe an offense is being or has been committed and that the person to be arrested is committing or did commit it. *State v. Nelson,* 129 Ariz. 582, 633 P.2d 391 (1981). There is no easy formula for determining probable cause because each case is decided on its own facts. *Cullison v. City of Peoria,* 120 Ariz. 165, 584 P.2d 1156 (1978). It is the trial court's function to determine the existence of probable cause and when its determination is supported by substantial evidence, its finding will not be disturbed by this court in an attempt to reach or justify a different conclusion. *State v. Dugan,* 113 Ariz. 354, 555 P.2d 108 (1976). We hold the trial court properly found appellant's arrest was supported by probable cause.

As *Hansen, supra,* demonstrates, whether there is probable cause to arrest is a question of fact. In this case, we note that the evidence showed that three Mexican males, all of whom had trouble speaking English, none of whom had identification, were traveling together in a stolen vehicle, at night. In addition, concealed weapons were discovered during a search of

the vehicle prior to taking all three subjects to the Chandler City jail.[1]

Appellant argues that the only facts known to the officers at the time they arrested him were that the vehicle was stolen and appellant was a passenger. He contends that the fact the driver indicated to the officer that he and his friends were illegal aliens, and that a subsequent, lawful search of the vehicle disclosed a rifle concealed by a shirt on the seat, as well as a pistol under the passenger's seat, could not be considered in determining the existence of probable cause because they occurred subsequent to appellant's arrest.[2]

Neither appellant, nor the state, have cited any cases which are dispositive of the exact issue presented here. We note that in *People v. Williams,* 9 Cal.App.3d 565, 88 Cal.Rptr. 349 (1970), the defendant raised an issue very similar to the one presented in this appeal. In that case, a police officer stopped a vehicle, in which the defendant was a passenger, for failure to stop at a stop sign. The automobile was halted to issue a citation and when the driver was unable to present a vehicle registration, a records check was run, disclosing that the vehicle was stolen. The officers then arrested both occupants of the vehicle and took them to the stationhouse. Marijuana discovered during the defendant's booking procedure was suppressed. The court held that there was no indication that the defendants were jointly engaged in any activity, legal or illegal.

The California Supreme Court in *People v. Hill,* 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1 (1974), specifically declined to rule on this issue in a case involving the arrest of a passenger in a stolen vehicle. The lower court in *People v. Hill,* 107 Cal.Rptr. 791 at 808, *vacated* 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1 (1974), had held that the passenger in the stolen vehicle was subject to arrest, and specifically declined to follow *People v. Williams, supra.*

We believe the failure of either party to this appeal to cite, or our research to disclose, cases exactly on point, testifies to the paucity of case law on this issue. However, we are persuaded that when a police officer stops a vehicle on a public highway for a traffic offense, and then discovers that the vehicle is stolen, he knows that a felony has been committed and has probable cause to believe that one or more of the persons inside the vehicle is participating in the commission of a felony.[3] We note that the Model Penal Code § 223.9, "Unauthorized Use of Automobiles and Other Vehicles," Comments (Official Draft 1980) also supports our conclusion that individuals involved in joy-riding offenses, whether they be passengers or drivers, are liable to prosecution. The Model Penal Code (Official Draft 1980) § 223.9, Comment 2, page 273, states:

> "A closer question is presented by the case of the non-operating passenger in a vehicle that is being operated without the owner's consent. There should be reluctance to authorize the conviction of a *young person whose sole connection with the transaction is to accept a ride in a car taken and operated by another.* The deterrent purposes of the law would seem to be served, on the other hand, by prosecution of the operator and those who can be held responsible as accomplices in the operation of the vehicle. A possible intermediate position would be to provide a presumption that all persons in a vehicle being operated without the owner's permission are accomplices in such operation.

1. Once the driver was lawfully arrested, the police were free to search the passenger compartment, as a search incident to a lawful arrest. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Cooper,* 130 Ariz. 348, 636 P.2d 126 (App.1981).

2. Because we find that the facts known to the officers at the time they transported appellant to jail supported his arrest under A.R.S. § 13–1803, we do not reach the issue of whether the

passengers could properly have been taken into custody for further investigation into their legal status.

3. It is clear that a defendant could be charged under A.R.S. § 13–302, *et seq.,* for participating with another in the crime of unlawful use of means of transportation under A.R.S. § 13–1803.

■ In this case the results of the search of the vehicle, as well as the prior circumstances, could have been considered by the officers, in arriving at a decision to arrest appellant and the other passenger. The fact appellant may have arguably been "formally" arrested prior to revelation of these additional facts is of no moment. Probable cause to arrest, on suspicion of unauthorized use of means of transportation, existed prior to removing appellant and the other passenger from the scene of the arrest for booking at the Chandler jail. The evidence supporting a finding of probable cause with respect to appellant was not discovered by exploitation of any illegality in his arrest. It was obtained while he was properly detained during investigation of the stolen vehicle and Meraz. *People v. Hill, supra.*

Based on all the facts, it is our opinion that the trial judge's decision to deny the motion to suppress was based on adequate evidence in the record.

## INSTRUCTIONS

■ Appellant's second issue is that the trial judge erred in failing to instruct the jury on the state's burden of proving beyond a reasonable doubt that appellant committed each element of armed robbery.

The record shows that after the jury was selected and sworn, the trial judge gave the jury preliminary instructions as authorized by Rule 18.6(c), Rules of Criminal Procedure, 17 A.R.S. This included the instruction that it was the state's burden to prove each element of the crime charged beyond a reasonable doubt. The trial then proceeded and took one and one-half days, after which the judge charged the jury as required by Rules 19.1(a)(8), 21.1, Rules of Criminal Procedure, and Rule 51, Rules of Civil Procedure, 16 A.R.S.[4] The judge's charge included one instruction which correctly outlined the elements of the crime of armed robbery; however, there was no concomitant instruction on the state's burden to prove that appellant had committed each element of the crime beyond a reasonable doubt. When the trial judge had completed her charge to the jury, she asked counsel whether there were any additions or corrections to the instructions, and the following discussion occurred at the bench out of the hearing of the jury:

MR. HENZE [Appellant's Counsel]: I don't know if it is just me, I was trying to listen for it, but you know, I have that talking going on in my ear. I didn't hear the reasonable doubt instruction. Is it in there?

THE COURT: I did that before we started the evidence. I have not reread it and I will not reread it.

MR. HENZE: I would request on the record that you give them the reasonable doubt instruction right now.

THE COURT: All right. My instructions to the jury were that they would get a copy in writing of all of them, that I would not reread to them ones already given but there will be a few additionals and I will stand with that.

MR. HENZE: So, can I make a record on that after they start deliberating, because it is my belief, Your Honor, that the reasonable doubt instruction is so important and that you have no control over them reading the instruction again once they go into the jury deliberation room and that it is so important it should be given at the conclusion of the case after they heard the evidence.

THE COURT: All right. You certainly may make a record. I would not emphasize one instruction over any other. With that caveat, I will not reread any of them but you certainly may make a record.

MR. HENZE: So you understand, Judge, I don't have any objection to you rereading all of those instructions you read at the beginning. I didn't want to emphasize one over the other.

---

4. According to the July 9, 1981 minute entry, the jury instructions were settled and the verdict forms were approved by the parties and the court at a recess which occurred immediately prior to the jury argument. However, the transcript of record shows no evidence of the hearing.

THE COURT: All right.

MR. HENZE: And I apologize for not raising this before we started instructing the jury. I didn't understand that you were not going to reinstruct them fully at the close of all of the evidence.

THE COURT: It is my recollection that I said to counsel that you had copies of those already given and the copy from which I read would go to the jury and I would not reread it, and perhaps I neglected to tell you that. In any event, I just told them that and we will stay with that. Other than that objection, are there others?

MR. HENZE: Pardon me?

THE COURT: Other than that objection, are there others?

MR. HENZE: No. I just think all of those needed to be added.

Thus the record is clear that the trial judge was of the opinion that since she had given the jury preliminary instructions on the state's burden of proof before the trial began and had given copies of this instruction to the jury to take with it into the jury room, that she was under no further obligation to charge the jury as to the state's burden of proof at the end of the trial. In our opinion, the failure to charge the jury at the conclusion of the trial on burden of proof, when requested, constitutes reversible error and requires a new trial.

A reading of the above bench discussion, shows that the court misunderstood the purpose of a Rule 18.6(c) preliminary instruction. The subsection reads: "Immediately after the jury is sworn, the court shall instruct the jury concerning its duties, its conduct, the order of proceedings, and the elementary legal principles that will govern proceedings." The subsection and the other subsections of the rule all relate to juror preparation for the trial and include a juror's handbook, the oath, and permission for note taking during trial. The Comment following Rule 18.6 shows that it is based on ABA, *Standards Relating to Trial by Jury*, §§ 3.1, 4.6(e) (Approved Draft 1968). Section 3.1 provides for a juror "orientation" which informs the jurors of the nature of their duties and introduces them to trial procedure and legal terminology. It expressly limits the orientation by providing that jurors *not* be instructed as to the law since prejudice to a party might result or jurors might be misled. Obviously, our Rule 18.6 did not adopt the caveat of the *Standards* and instead uses the word "instruct" as opposed to "orientation" and permits the instruction on "elementary legal principles that will govern the proceeding" as opposed to no instruction on the law applicable to the case. Section 4.6 of the *Standards* provides for the preparation of accurate, impartial and understandable pattern instructions, the tendering of instructions by parties at or before the close of the evidence, and a conference settling the instructions with specific objections to instructions made a part of the record. It then provides:

> (d) After the jury is sworn the court may give preliminary instructions deemed appropriate for their guidance in hearing the case. After the arguments are completed, the court should give the jury all necessary instructions.

> (e) All instructions, whether given or refused, should become a part of the record. All objections made to instructions and the rulings thereon should be included in the record.

Thus, the Comment referring to § 4.6(e) should have referred instead to § 4.6(d). Further, it is clear from the language of § 4.6(d) that our own Rule 18.6(c) derives its "preliminary instruction" language from this section. In addition, the commentary, following § 4.6, sets forth the argument both for and against instructing the jury on legal principles at the beginning of trial. The primary authority relied on for the *Standard* was Judge Prettyman, *Jury Instructions—First or Last?*, 46 A.B.A.J. 1066 (1960), where he advocates jury instructions both at the beginning and the end of the trial: At the beginning because jurors need to know the "rules of the game" and at the end of the trial so that the judge will recall parts of the initial instruction that need repeating to the jury. The Commentary then states:

**322**

Even if certain instructions are given after the jury is sworn, it will nonetheless be necessary for the jury to be instructed before they retire for deliberations. The instructions given at this time will include at least some of the instructions which were given when the trial opened. The second sentence of subsection (d) provides for these instructions to be given after the arguments are completed.

A.B.A. *Standards Relating to Jury Trial,* § 4.6 at 117–18.

■ This background serves to focus on our law. Article 2, §§ 23 and 24 of the Arizona Constitution, 1 A.R.S. insures a jury trial to persons charged with a crime. Article 6, § 27, of the Arizona Constitution provides, in part, that "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Rule 21.1, Rules of Criminal Procedure, 17 A.R.S. states that "The law relating to instructions to the jury in civil actions shall apply to criminal actions, except as otherwise provided." Rule 51(a), Rules of Civil Procedure, 16 A.R.S., requires the court to instruct the jury on the law "after arguments are completed." This conforms, in turn, with Rule 19.1(a)(8), Rules of Criminal Procedure, 17 A.R.S., requiring the judge to *charge* the jury following arguments of counsel. The charge given the jury must include all matters of law vital to the rights of a defendant charged with a particular crime. *State v. Tison,* 129 Ariz. 526, 538, 633 P.2d 335, 347 (1981); *State v. Miller,* 120 Ariz. 224, 585 P.2d 244 (1978); *State v. Hardy,* 112 Ariz. 205, 540 P.2d 677 (1975).

Since the burden of proof instruction was vital to the appellant's defense, and since this error was called to the attention of the trial judge before the case was given to the jury, we hold that the court committed reversible error requiring a new trial.

■ In order that there be no further confusion, we hold that the preliminary instruction of the jury, authorized by Rule 18.6(c), Rules of Criminal Procedure, is for the purpose of preparing the jury for the trial and constitutes an orientation process by which the jury is made to understand its duties and responsibilities. Where elementary legal principles that will govern the proceedings are given to the jury as a part of the orientation, the trial judge must repeat all such legal principles in its charge to the jury, where such legal principles include matters of law vital to the rights of a defendant.

The judgment and sentence are reversed and the matter is remanded for new trial or other disposition.

HAIRE, P.J., and MEYERSON, J., concur.