680 P.2d 801

**STATE of Arizona, Appellee,**

v.

**Cecil Thurman KINKADE, Appellant.**

No. 5752.

Supreme Court of Arizona,
In Banc.

March 12, 1984.

Reconsideration Denied April 17, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant.

CAMERON, Justice.

Defendant, Cecil Thurman "Jim" Kinkade, was convicted and judged guilty of first-degree murder, A.R.S. §§ 13–1105 and 13–1101, and armed robbery, A.R.S. §§ 13–1904, 13–1901, and 13–1902. He was sentenced to life without possibility of parole for twenty-five years for the murder, A.R.S. § 13–703, and to a consecutive sentence of ten and one half years for the robbery, A.R.S. §§ 13–701, 13–604, and 13–702. From those convictions, judgments, and sentences, he appeals. We have jurisdiction pursuant to A.R.S. §§ 13–4031 and 13–4035.

The issues we must resolve on appeal are:

 I. Was consolidation of defendant's trial with the trial of his co-defendant reversible error?

 II. Did the trial court err in not reading an instruction on reasonable doubt to the jury at the *end* of the trial?

 III. Did the trial court err in not giving the jury forms of verdict for both felony murder and premeditated murder?

The facts necessary to resolve these issues follow. Sometime near the end of March, 1982, Kinkade lost approximately $10,000 in a poker game to the victim, Jacob Goldberg. Though Kinkade testified the debt was forgiven, other testimony presented at trial indicated that an arrangement was made for payment at the rate of $200 per week. On the evening of 1 April 1982, Kinkade, his codefendant Thomas Pearson, and Goldberg were in northeast Phoenix driving in Goldberg's gold, 1979 Trans-Am. At some time during that evening, Goldberg was shot three times in the back of the head and once in the front of the head with a .22 caliber single-action pistol and buried in the desert. After burying Goldberg, the defendants drove to Texas in the victim's car. The facts directly relating to the shooting were hotly disputed at trial.

According to witnesses for the state, Pearson, acting in collusion with Kinkade, got Goldberg to stop the car in a deserted area on Pinnacle Peak Road by pretending to vomit. When Goldberg did stop, Kinkade, who was sitting in the back seat, shot him three times in the back of the head. The body was left in the desert while the defendants retrieved a pickup truck belonging to Kinkade's parents. Goldberg was shot once more in the front of the head and buried in the desert.

According to Kinkade's testimony, while they were driving he and Goldberg got into an argument. Goldberg claimed he had ties to the "Israeli Mafia" and could get Kinkade killed by simply making a phone call. Kinkade challenged him. Goldberg stopped the vehicle, they exited, and started fighting. Goldberg picked up a stick and tried to beat Kinkade with it, at which time Pearson shot Goldberg three times in the back of the head. Kinkade claimed that later incriminating statements he made were lies made in an attempt to protect Pearson, who Kinkade called his "little brother."

Pearson testified he was very drunk and Goldberg stopped the car so that Pearson could get out of the car to vomit. When Pearson returned to the vehicle, Kinkade had shot Goldberg. He claimed he did not report the crime because Kinkade threatened to kill him if he did.

After arriving in Texas, Richard Berry, a friend of Kinkade's and one of the state's chief witnesses, sold the car for $5,000. Pearson and Berry returned to Phoenix with two friends of Berry's. Kinkade flew back to Phoenix shortly thereafter. While in Phoenix, the defendants took Berry to the gravesite and Kinkade told him about killing Goldberg. It was disputed whether Pearson agreed with Kinkade's statement, which later became the state's theory of the case, or whether Pearson merely failed to disagree. Berry was later able to direct the police to the grave. Kinkade sold the pistol used in the killing and attempted to dispose of Goldberg's briefcase which had been taken from the automobile.

After a short time in Phoenix, the defendants went to Oregon. While there, other incriminating statements were heard. Kinkade was arrested in Oregon on 14 May. Pearson surrendered on 5 June.

Both defendants presented witnesses that supported their respective sides of the story. At one time or another the veracity of nearly every witness was challenged. The jury found both defendants guilty of murder and armed robbery.

## I. CONSOLIDATION

Although charged separately, the state moved to consolidate for trial pursuant to Rule 13.3(c), Arizona Rules of Criminal

Procedure, 17 A.R.S. The trial judge granted the motion over Kinkade's objection. Kinkade contends joinder was improper because he and Pearson presented antagonistic defenses.

 Rule 13.3(c) regarding consolidation must be read with Rule 13.4 regarding severance. *State v. Curiel*, 130 Ariz. 176, 634 P.2d 988 (App.1981). The decision to grant a motion to consolidate or to sever is generally within the sound discretion of the trial court. Other courts have held that where defenses are antagonistic, the trial of two defendants should not be consolidated, and severance is the rule. *State v. Singleton*, 352 So.2d 191, 192 (La.1977); *State v. Thibodeaux*, 315 So.2d 769, 771 (La.1975); *Jenkins v. State*, 230 A.2d 262, 272–73 (Del.1967); *Jung v. State*, 32 Wis.2d 541, 545–46, 145 N.W.2d 684, 687 (1966). The Arkansas Supreme Court has stated:

> A thorough review of severance cases can be found at 82 A.L.R.3d 245 and 54 A.L.R.2d 858, from which these conclusions may be drawn: the issue of severance is to be determined on a case by case basis, considering the totality of the circumstances, with the following factors favoring severance: (1) where defenses are antagonistic; (2) where it is difficult to segregate the evidence; (3) where there is a lack of substantial evidence implicating one defendant except for the accusation of the other defendant; (4) where one defendant could have deprived the other of all peremptory challenges; (5) where if one defendant chooses to testify the other is compelled to do so; (6) where one defendant has no prior criminal record and the other has; (7) where circumstantial evidence against one defendant appears stronger than against the other.

*McDaniel v. State*, 278 Ark. 631, 638, 648 S.W.2d 57, 60 (1983). *See also State v. Grisby*, 97 Wash.2d 493, 507–09, 647 P.2d 6, 14–15 (1982); *Commonwealth v. Moran*, 387 Mass. 644, 442 N.E.2d 399, 406–08 (1982); *People v. Hurst*, 396 Mich. 1, 6, 238 N.W.2d 6, 9–10 (1976); *Murray v. State*, 528 P.2d 739, 740 (Okla.Crim.1974).

The Arizona courts have allowed consolidation when there was lack of mutual antagonism. In *State v. Nilsen*, 134 Ariz. 433, 434, 657 P.2d 421, 422 (App.1982), the court held that the two co-defendants' defenses of entrapment and lack of intent were not antagonistic or inconsistent and so it was not an abuse of discretion to deny the severance. In *State v. Politte*, 136 Ariz. 117, 121–22, 664 P.2d 661, 665–66 (App.1982), the court held that the co-defendants' defenses, entrapment and insufficiency of the evidence, were not necessarily antagonistic and no prejudice resulted from a failure to sever. The court in *State v. Druke*, 115 Ariz. 224, 226, 564 P.2d 913, 915 (App.1977), held that the defenses of misidentification and lack of involvement were tangential, rather than on a collision course, and therefore held severance was not required. This court recently held that because the core of the testimonies of the co-defendants were not mutually exclusive, the denial of severance was not reversible error:

> It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant.

*State v. Cruz*, 137 Ariz. 541, 544, 672 P.2d 470, 473–74 (1983).

In order for the jury to believe the core of testimony offered on behalf of Kinkade (i.e. Pearson did the shooting), they necessarily had to disbelieve the testimony offered on behalf of Pearson (that Kinkade was the gunman). This is, of course, different from a defense of "I (or we) didn't kill him," or "I wasn't there. I don't know who killed him." In such a case the jury could believe both defendants and decide that a third party committed the murder. Where, as here, both defendants admit they were present at the crime but each charges the other with the crime, the trial is more of a contest between the defendants rather than between the defendants and the prosecution. The defenses of the two defendants, at their core, were completely antagonistic. We believe it was an abuse of discretion to grant the state's motion to consolidate. We reverse and remand for a new and separate trial.

Since we decide to reverse in this matter, we consider only those other issues raised on appeal which are apt to be raised at retrial.

## II. REASONABLE DOUBT INSTRUCTION

At the beginning of the trial, the court instructed the jury as to their role as jurors and as to the law.

The court included a proper reasonable doubt instruction. At the end of the closing arguments, the court stated:

> Ladies and Gentlemen, I'm not going to re-read to you the instructions on the law that [were] given to you throughout the course of this trial, but a copy in writing of all of the law will be available for your use in the jury room during your deliberations. There are a few additional instructions which I wish to give you at this time, if you will just bear with me and give me your close attention.

The reasonable doubt instruction was included in the written instructions, but was not read at the end of the trial. Neither the state nor either defendant objected to this omission from the instructions read to the jury at the end of the evidence. Kinkade now asserts that the failure to repeat the instructions at the end of the trial was reversible error, citing *State v. Marquez*, 135 Ariz. 316, 322, 660 P.2d 1243, 1249 (App.1983). In *Marquez* the court read a reasonable doubt instruction at the beginning of the trial but did not repeat it after final arguments. However, unlike the instant case, the defendant in *Marquez* objected to the failure to reiterate the instruction on reasonable doubt at the time of the trial, and the judge refused to do so. In the instant case, there was no objection at trial to the procedure followed by the judge. Failure to object to instructions at trial waives the right to appeal the error unless it rises to the level of fundamental error. Rule 21.3(c), Arizona Rules of Criminal Procedure, 17 A.R.S.; *State v. (Ricky Wayne) Tison*, 129 Ariz. 526, 538, 633 P.2d 335, 347 (1981); *State v. Dippre*, 121 Ariz. 596, 598, 592 P.2d 1252, 1254 (1979).

We have defined fundamental error as "error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial," *State v. (Gerald) Smith*, 114 Ariz. 415, 420, 561 P.2d 739, 744 (1977), and as error which "goes to the foundation of the case, or which takes from the defendant a right essential to his defense." *State v. Gamble*, 111 Ariz. 25, 26, 523 P.2d 53, 54 (1974) quoting *State v. Pulliam*, 87 Ariz. 216, 222, 349 P.2d 781, 785 (1960). We do not think the error here rises to the level of fundamental error. The jury was instructed concerning reasonable doubt at the beginning of the trial. The jury took a copy of the reasonable doubt instruction with them to the jury room for deliberation. All three attorneys, in their arguments to the jury, specifically stated that the jury must find the defendants guilty beyond a reasonable doubt. Each defense attorney gave a brief definition of reasonable doubt during his closing argument. It does not appear that the failure to re-read this instruction affected the jury's understanding of the burden of proof placed on the state. Though we think it would avoid error for trial courts to

repeat the reasonable doubt and other instructions at the end of the case, in this specific set of facts we do not find fundamental error.

### III. TWO FORMS OF VERDICT

 Defendant next claims that the court erred in not giving the jury forms of verdict for both felony murder and premeditated murder. Defendant contends that he has a right to a unanimous verdict as to all the elements of one type of murder. Defendant concedes we rejected this argument recently in *State v. Encinas*, 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982). However, he urges us to overrule Encinas and hold that two forms of verdict are required. After the trial in the instant case, the United States Supreme Court in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) brought into question this practice in death penalty cases. In light of Enmund, we stated:

> In order to comply with *Enmund*, therefore, we believe that *in future cases* where the jury might have found the defendant guilty of first degree murder based on a felony-murder theory, the trial judge must determine beyond a reasonable doubt prior to imposing a sentence of death that the defendant killed, attempted to kill or intended to kill. This determination, of course, must be in addition to those procedures specified in A.R.S. § 13–703.

*State v. McDaniel*, 136 Ariz. 188, 199, 665 P.2d 70, 81 (1983) (emphasis added). See also *State v. Jordan*, 137 Ariz. 504, 506, 672 P.2d 169, 171 (1983); *State v. Vickers*, 138 Ariz. 450, 452, 675 P.2d 710, 712 (1983). This rule is applicable only in potential death penalty cases. On retrial in this case, the court may comply with *Enmund*, supra, and *McDaniel*, supra. *But see State v. Rumsey*, 136 Ariz. 166, 665 P.2d 48 (1983), cert. granted — U.S. —, 104 S.Ct. 697, 79 L.Ed.2d 163 (1984).

The convictions and sentences for robbery and murder are reversed, and the matter is remanded for a new and separate trial.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.