680 P.2d 805

**STATE of Arizona, Appellee,**

v.

**Thomas PEARSON, Appellant.**

No. 5743.

Supreme Court of Arizona, In Banc.

March 12, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Fred C. Mather, Phoenix, for appellant.

CAMERON, Justice.

Defendant, Thomas Lee Pearson, was convicted and judged guilty of first-degree murder, A.R.S. §§ 13–1105 and 13–1101, and armed robbery, A.R.S. §§ 13–1904, 13–1901, and 13–1902. He was sentenced to life without possibility of parole for twenty-five years for the murder, A.R.S. § 13–703, and to a consecutive ten and one half years for the robbery, A.R.S. §§ 13–701, 13–604, and 13–702. From those convictions, judgments, and sentences, he appeals. We have jurisdiction pursuant to A.R.S. §§ 13–4031 and 13–4035.

We must resolve only one issue on appeal and that is whether the consolidation of the defendant's trial with the trial of his co-defendant was reversible error.

The facts necessary to resolve these issues, which are identical to those of *State v. Kinkade*, 140 Ariz. 91, 680 P.2d 801 (1984), follow. Sometime near the end of March, 1982, Pearson's co-defendant, Cecil Thurman "Jim" Kinkade, lost $10,000 to the victim, Jacob Goldberg, in a poker game. Testimony presented at trial indicated that an arrangement was made for Kinkade to pay Goldberg at the rate of $200 per week, but Kinkade claimed the debt was forgiven. On the evening of 1 April 1982, the defendants and Goldberg were in northeast Phoenix driving in Goldberg's gold, 1979 Trans-Am. According to witnesses for the state, Pearson persuaded Goldberg to stop the car in a deserted area on Pinnacle Peak Road by pretending to vomit. When Goldberg did stop, Kinkade shot him three times in the back of the head with a .22 caliber single-action pistol. The body was left in the desert while the defendants retrieved a pickup truck belonging to Kinkade's parents. Goldberg was shot once more in the front of the head, driven into the desert in the back of the truck, and buried. The defendants then drove the Trans-Am to Texas.

After arriving in Texas, Richard Berry, a friend of Kinkade's and one of the state's chief witnesses, sold the car for $5,000. Pearson and Berry returned to Phoenix with two friends of Berry's. Kinkade flew back to Phoenix shortly thereafter. While in Phoenix, the defendants took Berry to the gravesite and told him about killing Goldberg. Berry was later able to direct the police to the grave. Kinkade sold the pistol used in the killing and attempted to dispose of Goldberg's briefcase which had been taken from the automobile.

After a short time in Phoenix, the defendants fled to Oregon. While there, other incriminating statements were heard. Kinkade was arrested in Oregon on 14 May. Pearson surrendered on 5 June.

Both defendants testified concerning what happened in the early morning of 2 April. Kinkade testified that he and Goldberg had gotten into an argument in the car. Goldberg claimed he had ties to the "Israeli Mafia" and could get Kinkade killed by simply making a phone call. Kinkade challenged him. Goldberg stopped the car and they exited and started fighting. Goldberg picked up a stick and tried to beat Kinkade with it, at which time Pearson shot Goldberg three times in the back of the head. Kinkade claimed the later incriminating statements he made were lies made in an attempt to protect Pearson, who Kinkade called his "little brother." On the stand, Kinkade admitted he had lied every step of the way, but claimed he was now telling the truth.

Pearson testified he was very drunk and got out of the car to vomit. When he returned, Kinkade had shot Goldberg. He claimed he did not report the crime because Kinkade threatened to kill him if he did. The testimony was conflicting and both defendants presented witnesses that supported their respective sides of the story. The jury found both defendants guilty of murder and armed robbery. Both were sentenced to consecutive sentences of

twenty-five years to life for the murder and ten and a half years for the robbery.

Although the two defendants were charged separately, the state moved to join pursuant to Rule 13.3, Arizona Rules of Criminal Procedure, 17 A.R.S., which reads in part:

> Consolidation. If such offenses or such defendants are charged in separate proceedings, they may be joined in whole or in part by the court or upon motion of either party, provided that the ends of justice will not be defeated thereby.

Rule 13.3(c), Arizona Rules of Criminal Procedure, 17 A.R.S. Rule 13.3(c) must be read together with Rule 13.4(a) which reads:

> In General. Whenever 2 or more offenses or 2 or more defendants have been joined for trial, and severance of any or all offenses, or of any or all defendants, or both, is necessary to promote a fair determination of the guilt or innocence of any defendant of any offense, the court may on its own initiative, and shall on motion of a party, order such severance.

In the instant case, for reasons discussed more fully in the companion case of *State v. Kinkade*, supra, at 92–4, 680 P.2d at 802–04, the cores of the defenses of the two defendants were antagonistic to each other, and severance was necessary to promote a fair determination of innocence or guilt. *Id.; State v. Cruz*, 137 Ariz. 541, 544–45, 672 P.2d 470, 473–74 (1983). We hold that it was reversible error, for Pearson as well as for Kinkade, to grant the state's motion for consolidation.

Pearson contends on appeal that other errors were made. We are confident that if error was committed, it will not be repeated at a new trial.

The convictions and sentences for murder and robbery are set aside, and the matter is remanded for a new and separate trial.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.