2004 UT App 8

**STATE of Utah, Plaintiff and Appellee,**

v.

**German Cruz REYES, Defendant and Appellant.**

**No. 20030051–CA.**

Court of Appeals of Utah.

Jan. 15, 2004.

Kent R. Hart, Lisa J. Remal, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and J. Frederic Voros Jr., asst. atty. gen., Salt Lake City, for Appellee.

Before BENCH, Associate P.J., DAVIS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant, German Cruz Reyes, appeals his conviction of two counts of aggravated sexual assault, first degree felonies, in violation of Utah Code Annotated section 76–5–405 (Supp.2002). Specifically, Defendant argues that this court should reverse and remand for a new trial because (1) the trial court violated Defendant's due process and jury trial rights when it misstated the law in the jury instruction defining reasonable doubt, and (2) the trial court violated Utah law and Defendant's due process right to a fair trial when it failed to instruct the jury on the law at the close of evidence. We reverse and remand.

## BACKGROUND

¶ 2 On the evening of February 14, 2002, the victim, an eighteen-year-old female, went to Bricks nightclub in Salt Lake City, Utah, to go dancing. At approximately midnight, she went outside the club to wait for her boyfriend to call her on her cellular phone. Because the victim had consumed a few shots of tequila, she was feeling "kind of tipsy" at the time.

¶ 3 While the victim was waiting for her boyfriend's call, Defendant drove up to the front of the nightclub and motioned for the victim to approach his car. The victim walked over to Defendant and asked him for a cigarette. Defendant instructed the victim to walk around to the passenger side of his car. The victim got into Defendant's car but left the passenger door open with her feet hanging outside the car. Defendant then started to drive away and the victim put her feet inside the car and closed the door.

¶ 4 Defendant told the victim that he was taking her to a gas station to buy cigarettes. On the way to buy the cigarettes, Defendant and the victim spoke very little because Defendant did not speak English very well. Their conversation was limited to exchanging their names and ages. According to the victim, Defendant told her he was twenty-six. In fact, Defendant was approximately forty-years-old at the time.

¶ 5 When they were about halfway to a nearby 7–Eleven convenience store, the victim's boyfriend called her on her cellular phone. When Defendant and the victim arrived at the 7–Eleven, Defendant bought cigarettes while the victim continued to speak on the phone with her boyfriend. However,

the victim never informed her boyfriend that she was in Defendant's car.

¶ 6 When Defendant got back in the car, the victim, who was starting to feel nervous, asked Defendant if they were going back to the nightclub. Defendant told her that they were. On the way back, Defendant stopped the car in an alley located in an industrial area several blocks from Bricks nightclub. While the victim was still on the phone to her boyfriend, Defendant got out of the car and opened the rear passenger door and started to look for something on the floor behind the victim's seat. Defendant then opened the front passenger door and started to search the area around the victim's feet. The victim shut the passenger door and Defendant continued his search in the back seat. According to the victim, Defendant then opened her door again, held a knife to her stomach, and threw her phone to the ground, causing it to break into pieces. Next, Defendant made the victim get out of the car and forced her to pull her pants down. The victim started to cry and asked Defendant to stop. Moments later, Defendant pulled his own pants down and proceeded to penetrate the victim's vagina with his fingers. Defendant then turned the victim around and slightly penetrated the victim's vagina with his penis. The entire incident lasted about three or four minutes. Defendant then got back in his car and drove away.

¶ 7 After Defendant left, the victim dressed, put her phone back together, and called her boyfriend and informed him that she had just been raped. She then walked back to the nightclub and told a friend what had happened. The friend located a security guard who observed that the victim appeared to have been recently involved "in a scuffle." According to the security guard, the victim's clothes appeared "tattered," her hair was "messed up," and she was crying and very emotional. When the security guard asked the victim if she had been raped, she answered "yes."

¶ 8 During Defendant's trial, he admitted he had engaged in sexual relations with the victim, but claimed she had consented. According to Defendant, he asked the victim if she liked "sexo," and while she initially answered "no," the second time he asked the question, she said "yes." Defendant further claimed the victim exited his car of her own accord and he and the victim then "tried to have sex." Defendant denied using a knife to force Defendant to have sex with him.

¶ 9 On March 21, 2002, the State filed an information charging Defendant with one count of aggravated assault. During Defendant's preliminary hearing, the victim testified that Defendant had penetrated her vagina using his fingers, an allegation that the State had not known previously. Based on this new allegation, the trial court allowed the State to add a second count of aggravated sexual assault to the information.

¶ 10 Defendant's trial began on October 31, 2002. Prior to opening statements, the trial court proposed reading the jury eighteen preliminary instructions. These instructions included instructions on the presumption of innocence and on the definition of proof beyond a reasonable doubt. Defense counsel objected to the trial court giving the jury these preliminary instructions without also rereading the instructions at the end of the trial. The basis for the objection was that instructing the jury in this manner violated Utah law and Defendant's due process rights.

¶ 11 Defense counsel also objected to the wording of the trial court's proposed jury instruction defining reasonable doubt. That instruction read as follows:

All presumptions of law, independent of evidence, are in favor of innocence. A defendant is presumed innocent until proven guilty beyond a reasonable doubt. Where you are satisfied that a reasonable doubt exists as to a defendant's guilt, he/she is entitled to acquittal.

The burden is upon the prosecution to prove the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt does not require proof to an absolute certainty. Reasonable doubt is required, not doubt which is merely possible, since everything in human affairs is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is a degree of proof that satisfies your mind and convinces your conscientious understanding.

Reasonable doubt is doubt entertained by reasonable men and women and arises from the evidence, or lack of evidence, in the case.

Defense counsel claimed that this instruction was improper because it did not meet the requirements of the three-part test announced by the Utah Supreme Court in *State v. Robertson*, 932 P.2d 1219 (Utah 1997), *overruled on other grounds by State v. Weeks*, 2002 UT 98, ¶ 25 n. 11, 61 P.3d 1000. Specifically, defense counsel argued that under *Robertson*, the instruction was required to contain the phrase "proof beyond reasonable doubt obviates all reasonable doubt" and could not contain the phrase "reasonable doubt cannot merely be a possibility."

¶ 12 The trial court overruled both of defense counsel's objections and proceeded to read the jury eighteen preliminary instructions. Each juror was given a written copy of these preliminary instructions. The following day, immediately prior to closing arguments, the trial court read the jury the remaining fourteen instructions.[1] Again, each juror was provided with a written copy of these additional instructions.

¶ 13 After deliberating for approximately four hours, the jury found Defendant guilty on both counts. The trial court sentenced Defendant to two concurrent terms of fifteen years to life. Defendant timely filed his notice of appeal.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 14 Defendant argues that the trial court violated his "due process and jury trial rights" under the United States Constitution[2] because the trial court's jury instruction defining reasonable doubt did not require the State to " 'obviate' all reasonable doubt" and erroneously stated that "reason-

able doubt is ... not doubt which is merely possible." "Whether [a jury] instruction correctly states the law is reviewable under a correction of error standard, with no particular deference given to the trial court's ruling." *State v. Archuleta*, 850 P.2d 1232, 1244 (Utah 1993) (footnote omitted).

■ ¶ 15 Defendant further argues that when the trial court failed to reread the preliminary jury instructions at the close of evidence, it violated Utah law and his due process right to a fair trial. Determining the propriety of the instructions submitted to the jury presents a question of law, which we review for correctness. *See Ames v. Maas*, 846 P.2d 468, 471 (Utah Ct.App.1993).

## ANALYSIS

### I. Jury Instruction Defining Reasonable Doubt

■ ¶ 16 Defendant argues that the trial court violated his due process and jury trial rights because it failed to adequately instruct the jury on the definition of reasonable doubt. Specifically, Defendant claims that the trial court's jury instruction on reasonable doubt was unconstitutional because the instruction failed to require the State to " 'obviate' all reasonable doubt" and incorrectly stated that "reasonable doubt is ... not doubt which is merely possible." "[T]he Due Process Clause protects the accused against conviction except upon *proof beyond a reasonable doubt* of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) (emphasis added). "This beyond-a-reasonable-doubt requirement ... applies in state as well as federal proceedings." *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S.Ct. 2078,

---

1. These fourteen instructions did not include an instruction on Defendant's presumption of innocence or on the definition of reasonable doubt.

2. Although at the beginning of his brief Defendant cites to Article I, Section 7 of the Utah Constitution (guaranteeing that "[n]o person shall be deprived of life, liberty or property, without due process of law") and Article I, Section 12 of the Utah Constitution (guaranteeing criminal defendants "the right to a speedy and public trial, by an impartial jury"), Defendant

never argued, either at trial or on appeal, that his rights under the Utah Constitution had been violated. Therefore, we only address Defendant's constitutional claims that arise under the United States Constitution. *See State v. Seale*, 853 P.2d 862, 873 n. 6 (Utah 1993) (noting that when party fails to make separate argument under state constitutional provision, his or her claim will only be addressed under federal constitution).

2080–81, 124 L.Ed.2d 182 (1993) (citation omitted). In addition, "the Fifth Amendment [due process] requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated" so that "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." *Id.* at 278, 113 S.Ct. at 2081. "Denial of the right to a jury verdict of guilt beyond a reasonable doubt" qualifies as "structural error," thereby requiring reversal. *Id.* at 281–82, 113 S.Ct. at 2083.

 ¶ 17 Although "[t]he beyond a reasonable doubt standard is a requirement of due process, ... the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (citation omitted). "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id.,* 114 S.Ct. at 1243 (citations omitted).

¶ 18 In *Victor,* the United States Supreme Court considered the constitutionality of two reasonable doubt jury instructions. One of these instructions defined reasonable doubt in part as follows: " 'It is *not a mere possible doubt;* because everything relating to human affairs ... is open to some possible or imaginary doubt.' " [3] *Id.* at 7, 114 S.Ct. at 1244. The Court concluded that this definition of reasonable doubt was constitutional. *See id.* at 17, 114 S.Ct. at 1248–49.

¶ 19 Despite the Supreme Court's holding in *Victor* and its initial determination that no particular words are required when instructing the jury on the government's burden of proof, the Utah Supreme Court in *State v. Robertson,* 932 P.2d 1219 (Utah 1997), *overruled on other grounds* by *State v. Weeks,* 2002 UT 98, ¶ 25 n. 11, 61 P.3d 1000, without mentioning *Victor,* explained that it had "essentially adopted the analysis of Justice Stewart's dissent in *State v. Ireland,* 773 P.2d 1375, 1380–82 (Utah 1989), for reviewing the appropriateness of a reasonable doubt instruction." *Robertson,* 932 P.2d at 1232. According to our supreme court, this analysis required the following three-part test:

First, "the instruction should specifically state that the State's proof must obviate all reasonable doubt." Second, the instruction should not state that a reasonable doubt is one which "would govern or control a person in the more weighty affairs of life," as such instruction tends to trivialize the decision of whether to convict. Third, "it is inappropriate to instruct that a reasonable doubt is not merely a possibility," although it is permissible to instruct that a "fanciful or wholly speculative possibility ought not to defeat proof beyond a reasonable doubt."

*Id.* (citations omitted). Therefore, under *Robertson,* the trial court's jury instruction on reasonable doubt was improper because it stated that "reasonable doubt is required, not doubt which is merely possible" and it failed to mention that the State's burden of proof "must obviate all reasonable doubt." *Id.* (citations omitted).

¶ 20 The State attempts to diminish the significance of the three-part test in *Robertson* by arguing that the test is not based on any constitutional authority. First, the State claims that the first prong of the test is inconsistent with the United States Supreme Court's determination that a reasonable doubt instruction does not require any particular form of words. *See Victor,* 511 U.S. at 5, 114 S.Ct. at 1243. Second, the State claims that the third prong of the test misstates the standard for analyzing the constitutionality of a reasonable doubt instruction because "mere possibility" language was approved by the United States Supreme Court, *see id.* at 17, 114 S.Ct. at 1248–49, and by the Utah Supreme Court. *See Carter v. Galetka,* 2001 UT 96, ¶ 51, 44 P.3d 626. Accordingly, in its brief, the State asks this court to overrule *Robertson,* and during oral argument, the State went so far as to suggest

---

**3.** The definition of reasonable doubt at issue in this case used almost identical language. It stated: "Reasonable doubt is required, not doubt which is merely possible, since everything in human affairs is open to some possible or imaginary doubt."

that *Carter* had effectively overruled *Robertson*.

¶ 21 Although we agree that *Victor* cannot be reconciled with the three-part test in *Robertson*, we simply do not have the authority to overrule *Robertson*. Only the Utah Supreme Court can correct any deficiencies in *Robertson*. *See Sentry Investigations v. Davis*, 841 P.2d 732, 735 (Utah Ct.App.1992) ("The Court of Appeals simply cannot overrule the law as announced by the highest court in the state...."). Moreover, while it is true that in *Carter* the Utah Supreme Court found "no constitutional deficiency" in a reasonable doubt jury instruction that stated "a reasonable doubt must be a real, substantial doubt and not one that is merely possible or imaginary," *Carter*, 2001 UT 96 at ¶ 51, 44 P.3d 626, we do not agree with the State's claim that this meant that *Robertson* had been effectively overruled. The reason that the *Carter* court upheld the reasonable doubt instruction at issue was because a similar jury instruction that contained the term "substantial doubt" had been previously deemed constitutional by the United States Supreme Court.[4] *See id.* at ¶ 51 n. 4. More importantly, when analyzing the reasonable doubt instruction in *Carter*, the court did not reference *Robertson* or its three-part test. Therefore, we may not infer that when the court held that the challenged reasonable doubt jury instruction was constitutional, it was overruling *Robertson*. *See State v. Menzies*, 889 P.2d 393, 398–99 (Utah 1994) (noting that under the principle of stare decisis, a court of last resort " 'will follow the rule of law which it has established in earlier cases, unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent' " (citation omitted)).

¶ 22 In this case, it is clear that the trial court's reasonable doubt jury instruction failed to comport with the requirements of the three-part test set forth in *Robertson* and constituted a structural error requiring reversal. Although this test may be constitutionally flawed, it is not within our power to overrule it. Accordingly, on this issue, we reverse and remand for a new trial.

## II. Failure To Reinstruct The Jury

■ ¶ 23 Defendant also argues that when the trial court failed to reread all of the preliminary jury instructions at the close of evidence, it violated rule 17(g)(6) of the Utah Rules of Criminal Procedure and his due process right to a fair trial. "We interpret a [court] rule by examining the rule's plain language and resort[ ] to other methods ... only if the language is ambiguous." *State v. Quinonez–Gaiton*, 2002 UT App 273, ¶ 11, 54 P.3d 139 (second and third alterations in original) (quotations and citation omitted). Rule 17(g) provides in relevant part as follows:

> After the jury has been impaneled and sworn, the trial shall proceed in the following order:
>
> . . . .
>
> (g)(6) When the evidence is concluded *and* at any other appropriate time, the court shall instruct the jury;
>
> . . . .

Utah R.Crim. P. 17(g)(6) (emphasis added).

¶ 24 The plain language of this rule indicates that a trial court must instruct the jury at the close of evidence. Although the trial court is also required to instruct the jury at "any other appropriate time," we do not construe this to mean, as the State contends, that a trial court can adhere to the rule by giving the jury some of its instructions before opening statements (an "appropriate time") and the rest of its instructions before closing arguments ("[w]hen the evidence is concluded"). Utah R.Crim. P. 17(g)(6). The

---

4. As noted earlier, the Supreme Court reviewed two sets of reasonable doubt jury instructions in *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). One instruction was challenged based on reasonable doubt being defined in part as " 'not a mere possible doubt.' " *See id.* at 7, 114 S.Ct. at 1244. The other instruction was challenged based on reasonable doubt being defined in part as an " 'actual and substantial doubt.' " *See id.* at 18, 114 S.Ct. at 1249. It was the latter instruction which provided the basis for the court's decision to uphold the reasonable doubt instruction at issue in *Carter v. Galetka*, 2001 UT 96, 44 P.3d 626. *See id.* at ¶ 51 n. 4.

use of the mandatory word "shall" along with the conjunction "and" demonstrates that such an interpretation is not plausible. *Id.* Were we to accept the State's argument, a trial court could comply with rule 17(g)(6) by reading all but one of the jury instructions at the beginning of the trial and save one remaining instruction for after the close of evidence; a result clearly not allowed by the drafters of the rule.

¶ 25 The State also argues that because rule 19(a) of the Utah Rules of Criminal Procedure expressly allows a trial court to provide the jury with preliminary instructions prior to opening statements,[5] the trial court in this case was not required to repeat these instructions to the jury after the close of evidence. Again, we find the State's argument unpersuasive. In *State v. Marquez,* 135 Ariz. 316, 660 P.2d 1243 (Ct.App.1983), the court considered whether the trial court erred when it instructed the jury on the State's burden of proof at the opening of the trial but failed to do so after the close of evidence. *See id.* at 1247. As part of its analysis, the court examined Arizona Rule of Criminal Procedure 18.6(c), which contains language similar to Utah Rule of Criminal Procedure 19(a). Rule 18.6(c) states: " 'Immediately after the jury is sworn, the court shall instruct the jury concerning its duties, its conduct, the order of proceedings, and the elementary legal principles that will govern proceedings.' " *Marquez,* 660 P.2d at 1248 (citation omitted). The court interpreted this rule as follows:

> In order that there be no further confusion, we hold that the preliminary instruction of the jury, authorized by Rule 18.6(c), Rules of Criminal Procedure, is for the purpose of preparing the jury for the trial and constitutes an orientation process by

which the jury is made to understand its duties and responsibilities. Where elementary legal principles that will govern the proceedings are given to the jury as a part of the orientation, the trial judge must repeat all such legal principles in its charge to the jury, where such legal principles include matters of law vital to the rights of a defendant.

*Id.* at 1249; *see also State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640, 644 (1990) (noting that "[i]f the preliminary or cautionary instructions include matters of law vital to the rights of a defendant, the trial court is not excused from including or repeating all such instructions after the arguments are completed").

¶ 26 Like Arizona's rule 18.6(c), Utah's rule 19(a) permits a trial court to provide jurors, as part of their orientation, with preliminary instructions on matters that the court "believes will assist the jurors in comprehending the case." Utah R.Crim. P. 19(a). Although the rule authorizes a trial court to instruct the jury not only on procedural matters but also on matters relating to the fundamental rights of a defendant, such as "the elements and burden of proof for the alleged crime," *id.,* it does not supercede the plain and unambiguous mandate contained in rule 17(g)(6) that the jury be instructed at the close of evidence. In other words, while it is permissible, and we believe appropriate, for a trial court to provide the jury with preliminary instructions on "matters of law vital to the rights of a defendant," *Marquez,* 660 P.2d at 1249, such as the presumption of innocence and the State's burden of proof, in order to fully comply with rule 17(g)(6), the court must repeat these instructions at the close of evidence.[6] *Id.* Accordingly, we hold

**5.** Rule 19(a) of the Utah Rules of Criminal Procedure provides in relevant part as follows:

> After the jury is sworn and before opening statements, the court may instruct the jury concerning the jurors' duties and conduct, the order of proceedings, the elements and burden of proof for the alleged crime, and the definition of terms. The court may instruct the jury concerning any matter ... the court in its discretion believes will assist the jurors in comprehending the case.

**6.** We note that requiring a trial court to reinstruct the jury at the end of the trial is consistent

with the approach taken by courts in other jurisdictions that have interpreted rules similar to rule 17(g)(6) of the Utah Rules of Criminal Procedure. *See e.g., State v. Jackson,* 144 Ariz. 53, 695 P.2d 742, 743 (1985) (concluding that trial court is required, under Arizona Rules of Criminal Procedure, to "instruct the jury at end of evidence and oral argument"); *Bennett v. State,* 302 Ark. 179, 789 S.W.2d 436, 438 (1990) (concluding that statute, which read: " 'When the evidence is concluded, the court shall, on motion of either party, instruct the jury on the law applicable to the case,' " was "so clear that it did

that the trial court erred when, at the end of the trial, it failed to reinstruct the jury on the law as it related to Defendant's fundamental rights.[7]

 ¶ 27 Having determined that the trial court erred when it failed to repeat its preliminary jury instructions at the close of evidence, we must ascertain whether this error was harmful. In order for an error to be harmful, "the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987); *see also* Utah R.Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded.").

¶ 28 Based on our review of the record, we cannot say that had the trial court repeated the preliminary jury instructions at the close of evidence, the verdict in this case would have been any different. The time period separating the trial court's reading of the preliminary instructions from the close of evidence was less than twenty-four hours. Moreover, when the jurors retired to deliberate, they were provided with a written copy of every preliminary and final jury instruction. Finally, despite Defendant's assertions to the contrary, this case was not a close credibility contest over the issue of consent. Other than Defendant's testimony, all of the relevant evidence demonstrates that the victim engaged in sex against her will. The victim had known Defendant for less than half-an-hour. She immediately reported the incident to her boyfriend and told him and the security guard at Bricks nightclub that she had just been raped. Finally, the securi-

ty guard confirmed that it appeared that the victim had recently been in "a scuffle" when he saw her and that she appeared to him to be extremely upset and emotional.

¶ 29 Therefore, we conclude that although the trial court erred when it failed to reinstruct the jury at the close of evidence, this did not affect the jury's verdict. Accordingly, the trial court's error was harmless.

## CONCLUSION

¶ 30 The reasonable doubt instruction that the trial court gave to the jury clearly did not comport with the first and third prongs of the three-part test as announced in *State v. Robertson*, 932 P.2d 1219, 1232 (Utah 1997), *overruled on other grounds* by *State v. Weeks*, 2002 UT 98,¶ 25 n. 11, 61 P.3d 1000. Although *Robertson* is not consistent with United States Supreme Court precedent, this court does not have the authority to overrule *Robertson*. Therefore, we reverse and remand for a new trial.

¶ 31 In addition, we conclude that the trial court violated rule 17(g)(6) of the Utah Rules of Criminal Procedure when it failed to repeat those preliminary jury instructions that related to Defendant's fundamental rights. However, in light of the evidence in this case, the short time between the preliminary instructions and the close of evidence, and the fact that the jurors were provided with written copies of all of the jury instructions, we are confident that the trial court's error did not influence the jury verdict. Therefore, the trial court's error was harmless.

not need interpretation" (citation omitted)); *Little v. State*, 230 Ga.App. 803, 498 S.E.2d 284, 287 (1998) (noting that in light of statute that provided that "the trial court shall instruct the jury in the law after the closing arguments are completed," preliminary instructions could not "serve as a substitute for a complete jury charge, as the statute requires, after the evidence is closed and arguments concluded" (quotations and citations omitted)); *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640, 644 (1990) (holding, under Ohio Rules of Criminal Procedure, that although trial court may give jury preliminary instructions, "[a]fter arguments are completed, [the] trial court must fully and completely give the jury all instructions which are relevant and

necessary for the jury to weigh the evidence and discharge its duty as fact finder"); *State v. Nelson*, 587 N.W.2d 439, 444 (S.D.1998) (construing word "shall" as "a mandatory directive" in a statute that read: " 'The court *shall read* its instructions to the jury' at the close of the evidence and before final argument." (citation omitted)).

7. Because we hold that the trial court's failure to reinstruct the jury violated rule 17(g)(6) of the Utah Rules of Criminal Procedure, we do not address Defendant's argument that the trial court's failure to reinstruct the jury also violated his due process right to a fair trial.

¶ 32 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and JAMES Z. DAVIS, Judge.