MR. JUSTICE SHEEHY,
dissenting:
I dissent.
I.
Jurists have no difficulty in accepting the theory of double jeopardy. The constitutional goal that a person should not be put at risk for his life, property, or freedom more than once for the same alleged crime is to prevent continued prosecutions by the State until it finally gets the person convicted. As a concept, that is quite acceptable. In practice however, in a double jeopardy situation, jurists face a difficult problem. If double jeopardy has in fact occurred the person, though he may be guilty, walks free. A double jeopardy issue such as we find here places an appellate court between the hammer and the anvil, to temper the steel of the law.
It is my judgment that the defendant has been subjected to double jeopardy.
The first trial of Smith was a jury trial. The jury was impaneled and sworn and witnesses were sworn and testified. Jeopardy therefore attached. Crist v. Bretz (1978), 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24. What happened in the first trial to bring about the motion for mistrial is not related in the majority opinion and I therefore set it forth here.
Counsel for Smith in cross examining Edwin Galloway, the father of the deceased victim, elicited the following testimony:
“Q. Were they sleeping together? A. No, sir.
“Q. Are you satisfied of that? A. Yes, sir.
“Q. And that they were both just not the type because of their religious belief to be sleeping together, right? A. I don’t know about him, but I know about her.
“Q. There is nothing you knew about him that would cause you to disbelieve that he had the same and equal feelings about the situation? A. Not at that time. Since then I do have.
“Q. Well, it is just an opinion of yours then, isn’t it? A. Yes, sir.” In redirect examination the prosecution examined as follows:
*384 “Q. Mr. Moses was talking to you about your daughter and the Defendant. I’m not sure I was able to catch all of it. Something about they weren’t the type. What was your response to that question? A. I believe he was talking about sleeping together, and mine was I knew what Sue was but I did not know what Smith was doing or his intentions.
“Q. At the time, and reflecting back now, Ed, at the time you were fairly confident he wasn’t the type, either, weren’t you? A. Yes, sir.
“Q. And didn’t you say that since then you have changed your opinion? A. Yes, sir
(Author’s note: If the prosecution had stopped here, there could be no quarrel. Instead, he pressed on.)
“Q. (By Mr. Racicot). What was the information you received, Ed? A. That he was corresponding and had another girl that he was going to marry.
“Q. Did you receive any information concerning his previous sexual activity? A. Yes, I did.
“Q. And what was that information? A. That he went with a girl here in town and had sex with her before he went with Susan.”
(Author’s note: Now the prosecutor moved in for the kill.)
“Q. Did you receive any information about some of the girl friends he had back in Virginia? A. Yes, sir.
“Q. And what did that information entail? A. That he had impregnated a girl, and she was 13, and the girl aborted the baby.
“Q. So that was the information that changed your opinion? A. Yes. That and other gossip.”
Following that examination by the prosecutor, the defendant moved the District Court for a mistrial and the District Court was forced to agree. Accordingly the first jury was discharged and the first trial ended.
Defendant’s counsel thereafter moved to dismiss the prosecution entirely on the ground that since jeopardy had attached to the first instance, further prosecution by a second trial would constitute double jeopardy. The District Court denied the motion to dismiss, holding:
“The court finds that the prosecutor was not guilty of goading or misconduct, that the prosecutor acted in good faith under the mistaken belief that since defense counsel sought to introduce evidence of good character that the State was justified in disproving the same, particularly as to the defendant’s sexual past. This, in the court’s opinion, was a mistake of law on the part of the prosecution *385 as to how far the State could go in introducing evidence of bad character and particularly the evidence that the defendant had impregnated a 13 year old girl and that she had an abortion.”
The court concluded that the prejudicial effect of the evidence far outweighed its probative value as evidence of bad character.
The further argument of counsel for Smith on the motion to dismiss was that the State had failed to give any notice of evidence of prior crimes as required in State v. Just (1979), 184 Mont. 262, 602 P.2d 957. The District Court referred to our decision in State v. Just but made no decision respecting its applicability. State v. Just was intended to set up guide rules for district courts in criminal actions where it was the intention of the State to introduce evidence of other crimes or wrongs. Under Section 404 Montana Rules of Evidence, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith. In this case the acts which the prosecutor elicited from witness Galloway had no tendency to prove a trait of character to which he conformed under the charges against him.
When the District Court denied Smith’s motion to dismiss on the grounds of double jeopardy (he had also asked for a change of venue) Smith appealed the denial of dismissal to this Court, which of course, he had a right to do. A defendant is not required to undergo the second trial before his appeal of denial of a double jeopardy issue is heard.
I must now set out a timetable for the reader to understand what happened next. On January 18, 1984, the District Court had declared the mistrial in the first case. On January 27,1984, Smith filed a motion to dismiss entirely on the grounds of double jeopardy. On February 2, 1984, the retrial of the cause was set by the District Court for April 25, 1984. On March 19, 1984, the District Court entered its order denying the motion to dismiss on double jeopardy grounds. On April 18, 1984, the defendant perfectly within the time afforded by the rules, filed his notice of appeal from the denial of his double jeopardy claim.
On April 19, 1984, the State on the relation of the special prosecutor filed a petition in cause No. 84-176 in this Court for a writ of supervisory control requesting this Court to suspend our rules for appellate review of the District Court’s decision, to vacate the notice of appeal, to take immediate jurisdiction and to decide the issue of double jeopardy. On April 20, 1984, this Court issued its order directing defendant to prepare, serve and file a written response to the *386 prosecutor’s petition by noon of April 24, 1984. Oral argument on the petition was set and had on April 24, 1984 at 1:30 p.m. This Court in the same afternoon after the hearing made and entered its order affirming the denial of dismissal on the ground of double jeopardy and ordering the trial to proceed the next day as previously set on April 25, 1984.
Thus was this Court stampeded into deciding the vital issue of double jeopardy. Our order for the issuance of writ of supervisory control in cause No. 84-176 is unpublished. Three of the then justices, Chief Justice Frank A. Haswell, John Conway Harrison, and L. C. Gulbrandson signed the plurality opinion. Justice Frank B. Morrison concurred specially that double jeopardy did not attach but he hoped that the trial court would consider a motion for continuance of the retrial. Justices John C. Sheehy and Daniel J. Shea dissented to the precipitous action of the plurality and Justice Fred J. Weber dissented on the ground that the circumstances of the case did not justify the immediate action being taken by the court “majority.”
The defendant Smith was thus deprived of a measured approach to a decision on his appeal. Now, the fractured decision in the supervisory control case, issued a bare four days after the original pleading was filed, is used by the majority to bar further consideration of the double jeopardy issue on the grounds of res judicata! “0, judgment Has flown to brutish beasts and men have lost their reason.”
By resorting to res judicata as its ratio decidendi, the majority do not have to explain whether they will adhere to the rule of the Supreme Court of the United States in Oregon v. Kennedy (1982), 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416, 424, or whether they would adopt the expanded rule undertaken by Oregon itself in State v. Kennedy (1983), 295 Or. 260, 666 P.2d 1316.
The effect of the holding of the United States Supreme Court in Oregon v. Kennedy was that double jeopardy will not be found, even though the defendant made a successful motion for mistrial, if the conduct of the state which brought about the mistrial was not intended by the state to provoke the defendant into moving for a mistrial.
The Supreme Court of Oregon determined that the United States Supreme Court was too narrow in its interpretation of the effect of the prosecutorial conduct, and stated that a retrial would be barred if the conduct of the state was intended to goad the defendant moving for mistrial or the prosecutor either intended a mistrial or was *387 indifferent to the resulting mistrial. 666 P.2d at 1325. The Oregon Supreme Court said:
“A test limited to intentional provocation of mistrials, however, has two shortcomings besides the question of proof. First, the Supreme Court’s analysis focused on prosecutorial misconduct, as in this case. The Court adopted that test in part because, within the limits of professional ethics and the state’s other overriding values, prosecutors are expected to strive for convictions, and ‘overreaching’ could be asserted of every prejudicial error that may require a retrial.
“Second, a finding that a prosecutor initially pursued a course of prejudicial misconduct for the purpose of forcing a mistrial is a grave matter. Such behavior is a contempt of court. ORS 33.010(c), (d). It also is a violation of professional standards that can lead to disbarment or other discipline, and perhaps of federal civil rights statutes. See DR 1-102(A)(5), 7-102(A)(l); 18 U.S.C. Section 242. A judge prepared to make such a finding properly would not only declare a mistrial without possibility of reprosecution but also report the episode to the Oregon State Bar, Code of Judicial Conduct Canon 3(B)(3). But we do not think that impermissible double jeopardy for the defendant is limited to the few situations in which a judge is sufficiently convinced of a prosecutor’s improper intentions to invoke those penalties. That places too heavy a burden on the inference that a defendant must ask a judge to draw from the objective conduct and circumstances. To repeat, punishment of the errant official is not the object of the guarantee against placing the defendant again in jeopardy for the same offense. Whether or not the official’s error rises to that level of culpability, for purposes of the guarantee we think it suffices that he has consciously chosen to engage in prejudicial misconduct, whatever the motive.
“We therefore conclude that a retrial is barred by Article I, Section 12, of the Oregon Constitution when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal. When this occurs, it is clear that the burden of a second trial is not attributable to the defendant’s preference for a new trial over completing the trial infected by an error. Rather, it results from the state’s readiness, though perhaps not calculated intent, to force the defendant to such a choice.”
*388 666 P.2d 1325-26.
The State of Arizona has also broadened the U.S. Supreme Court decision in Oregon v. Kennedy, holding in Pool v. Superior Court of the State of Arizona (1984), 139 Ariz. 98, 677 P.2d 261, that if the mistrial is granted because of the improper conduct of the prosecutor and the conduct taken as a whole amounts to intentional conduct or which is pursued for any improper reason with indifference to the significant danger of mistrial, that double jeopardy attaches.
Counsel for Smith in this case contends that even if we adopt the standard provided by the U.S. Supreme Court in Oregon v. Kennedy, the intent of the prosecutor is the fulcrum of decision; that we should apply the same tests in determining that intent as is applied under our criminal statutes to a criminal defendant. Thus Smith’s counsel contends that the prosecutor acted knowingly if he was aware of his conduct or that the circumstances existed, and that he acted knowingly with respect to the result of his conduct if he was aware that it was highly probable that such a result would be caused by his conduct. Further, the prosecutor, Smith’s counsel contends, acted purposely with respect to the resulting mistrial, if it was his conscious object to engage in the conduct or to cause the result. Section 45-2-101, MCA. We have approved of those tests before as to the meaning of “knowingly” and “purposely,” State v. Coleman (1978), 177 Mont. 1, 579 P.2d 732. There seems little reason why the same test should not apply to the conduct of the prosecutor in bringing about a defense motion for mistrial.
It is my opinion that in cases such as presented here on the issue of double jeopardy, that we should adopt the standards of conduct taken and approved by the supreme courts of Oregon and Arizona and apply those standards under Art. II, Section 25, 1972 Mont. Const, as state policy. Such standards would require further determination by a fact finder as to whether the prosecutor here acted purposely and knowingly in eliciting the improper testimony. I have expressed my thoughts on double jeopardy at length in this dissent because the U.S. Supreme Court in Oregon v. Kennedy, supra, found a safeguard to defendants in double jeopardy questions in the availability of a review in the federal courts system on habeas corpus. There has not been an adequate disposition of the double jeopardy question in this instance either under our issuance of a writ of supervisory control or by the determination of this appeal. In my opinion the State was negligently indifferent to the result of its con *389 duct in the first trial and I would dismiss on grounds of double jeopardy.
There are additional grounds on which I would reverse the results in this case. Each is an example of overreaching by the State. Thus I would reverse for errors in adding Jack Wehrenberg as a witness on April 23, 1984, for failure to strike the testimony of Bill Newhouse, for failure to grant a change of venue, for admitting the statements attributed to Smith by Arne Sand but especially for instructional error which I will now discuss.
The District Court failed to give instructions vital to the defense when the cause was submitted to the jury, the court taking the position that the jury had been instructed in the preliminary instructions, and the jury would take the written instructions with them to the jury room.
The issue is best framed by the counsel for Smith:
“The State’s Proposed Instruction No. 11 was an instruction as to the definition of reasonable doubt. Counsel for the defendant did not object to the giving of this instruction. The State’s Proposed Instruction No. 3 was an instruction directing the jury to not act upon sympathies or prejudices. Counsel for the Defendant did not object to the giving of this instruction. The State’s Proposed Instruction No. 12 was an instruction directing the jury that a Defendant could not be convicted by conjecture or probability. Counsel for the Defendant did not object to the giving of this instruction. Prior to closing arguments, certain instructions were then read to the jury. In chambers, counsel for the Defendant then objected to the Court’s failure to give State’s Proposed Instruction Nos. 11, 3, and 12. The Court responded that the three proposed instructions were covered in the preliminary instructions given to the jury at the beginning of trial. Although the preliminary instructions were sent to the jury room, they were not read at the close of the trial. The question now becomes whether it was error to fail to give the State’s Proposed Instruction Nos. 11, 3, and 12 or to read their equivalent from the preliminary instructions.”
The majority opinion is egregiously in error in skipping over this vital issue.
A few years ago, we adopted, with a good deal of press hoopla, the *390 American Bar Association Standards for Criminal Justice. Standard 15-3.6(e) provides:
“Before the taking of evidence, the court may give preliminary instructions to the jury-deemed appropriate for their guidance in hearing the case. After the arguments are completed, the court should give the jury all necessary instructions.”
The commentary provided with the Standards indicates the necessity for repeating some of the preliminary instructions:
“Even if certain instructions are given after the jury is sworn, it will nonetheless be necessary for the jury to be instructed before retiring for deliberations. The instructions given at this time will include at least some of the instructions given when the trial opened. The second sentence of paragraph (e) provides for these instructions to be given after final arguments.”
(The Standard as adopted by us refers to instructions after arguments although that is not the procedure in our state courts. Under our practice, instructions are given to the jury before final arguments. Section 46-16-401(6), MCA.)
An identical situation was presented to the Arizona Court of Appeals in State of Arizona v. Marquez (App. 1983), 135 Ariz. 316, 660 P.2d 1243, 1249. There the Arizona Court reversed, saying:
“Since the burden of proof instruction was vital to appellant’s defense, and since this error was called to the attention of the trial judge before the case was given to the jury, we hold that the court committed reversible error requiring a new trial.
“In order that there be no further confusion, we hold that the preliminary instruction of the jury, authorized by Rule 18.6(c), Rules of Criminal Procedure, is for the purpose of preparing the jury for the trial and constitutes an orientation process by which the jury is made to understand its duties and responsibilities. Where elementary legal principles that will govern the proceedings are given to the jury as part of the orientation, the trial judge must repeat all such legal principles in his charge to the jury, where such legal principles include matters of law vital to the rights of the defendant.” (Emphasis added.)
660 P.2d 1249.
We adopted the American Bar Association Standards for Criminal Justice with a good deal of fanfare, and for good reason. Those Standards were the result of years of work to which judges, defense and prosecuting lawyers contributed mightily. The Standards represent the best thought of American jurisprudence with respect to proper *391 procedure in criminal cases. Although we adopted those standards, we do not give them even lip service in this case.
I find further reversible error in the failure of the District Court to give defendant’s proposed instruction No. 15, which would have told the jury how to regard evidence which is susceptible of two instructions or interpretations. Since this case depended so largely on circumstantial evidence, this particular jury instruction was vital to the defense and should have been given. See People v. Yrigoyen (1955), 45 Cal.2d 46, 286 P.2d 1.