2005 UT 33

**STATE of Utah, Plaintiff, Petitioner, and Cross–Respondent,**

v.

**German Cruz REYES, Defendant, Respondent, and Cross–Petitioner.**

**No. 20040078.**

Supreme Court of Utah.

June 7, 2005.

Mark L. Shurtleff, Att'y Gen., J. Frederic Voros, Jr., Asst. Att'y Gen., Michael E. Postma, Salt Lake City, for petitioner.

Kent R. Hart, Lisa J. Remal, Salt Lake City, for respondent.

NEHRING, Justice:

## INTRODUCTION

¶ 1 We granted certiorari to review the court of appeals's ruling that the reasonable doubt instruction used in the trial of German Cruz Reyes was improper because it did not specifically conform to the three-part reasonable doubt instruction upheld by this court in *State v. Robertson*, 932 P.2d 1219 (Utah 1997), *overruled on other grounds by State v. Weeks*, 2002 UT 98, ¶ 25 n. 11, 61 P.3d 1000. The State asks us to overrule *Robertson*. We also agreed to take up Mr. Reyes's cross-petition, which challenges the court of appeals's determination that the trial court's refusal to reread preliminary jury instructions at the close of evidence was harmless error. Because we share the court of appeals's misgivings about the wisdom of *Robertson*, we reverse the court of appeals's

holding on the reasonable doubt instruction and announce a "safe harbor" reasonable doubt instruction. We also affirm, on other grounds, the court of appeals's decision on the timing of the jury instructions.

## BACKGROUND [1]

¶ 2 In 2002, the State charged Mr. Reyes with aggravated assault. Before the trial began, the court proposed reading the eighteen preliminary instructions, including instructions on the presumption of innocence and the definition of reasonable doubt. Mr. Reyes objected to an initial reading of the instructions unless the court reread the instructions at the end of the trial, arguing that a failure to recite the instructions at the close of the evidence would violate his due process rights and Utah law. Mr. Reyes also objected to the content of the trial court's reasonable doubt instruction. The instruction read:

All presumptions of law, independent of evidence, are in favor of innocence. A defendant is presumed innocent until proven guilty beyond a reasonable doubt. Where you are satisfied that a reasonable doubt exists as to a defendant's guilt, he/she is entitled to acquittal.

The burden is upon the prosecution to prove the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt does not require proof to an absolute certainty. Reasonable doubt is required, not doubt which is merely possible, since everything in human affairs is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is a degree of proof that satisfies your mind and convinces your conscientious understanding. Reasonable doubt is doubt entertained by reasonable men and women and arises from the evidence, or lack of evidence, in the case.

¶ 3 Mr. Reyes asserted this instruction was improper because it did not pass the three-part content test announced in *State v. Robertson*, 932 P.2d 1219 (Utah 1997), *overruled on other grounds by State v. Weeks*, 2002 UT 98, ¶ 25 n. 11, 61 P.3d 1000. Mr. Reyes cited first, the instruction's failure to comply with

*Robertson's* mandate that a reasonable doubt instruction "specifically state that the State's proof must obviate all reasonable doubt" and, second, its improper inclusion of the phrase "doubt which is merely possible," *id.* at 1232.

¶ 4 The trial court turned away both of Mr. Reyes's objections. At the conclusion of opening statements, the court read the eighteen preliminary jury instructions and provided each juror with a written copy of them. The next day, before closing arguments, the court read fourteen additional instructions and again provided each juror a written copy of the instructions. The jury found Mr. Reyes guilty on both counts, and the court sentenced him to two concurrent terms of fifteen years to life. Mr. Reyes appealed.

## I. THE COURT OF APPEALS REVIEWS *REYES* AND REASONABLE DOUBT

¶ 5 Mr. Reyes took two issues to the court of appeals. *State v. Reyes*, 2004 UT App 8, ¶ 1, 84 P.3d 841. First, he repeated his claim that the trial court violated his "due process and jury trial rights" under the United States Constitution because the trial court's reasonable doubt instruction did not utilize the specific language from *Robertson* requiring the State to "obviate all reasonable doubt" and "erroneously stated that reasonable doubt is ... not doubt which is merely possible." *Id.* at ¶ 16. Second, Mr. Reyes argued that when the trial court refused to reread the eighteen preliminary jury instructions at the close of evidence, it violated Utah Rule of Criminal Procedure 17(g)(6) and therefore "his due process rights to a fair trial." *Id.* at ¶ 23.

¶ 6 Mr. Reyes argued that the "beyond a reasonable doubt" jury instruction was defective because it failed to comport with the *Robertson* test. *Id.* at ¶ 16. The court of appeals took up its analysis of Mr. Reyes's challenge not with *Robertson*, but with the United States Supreme Court's most recent pronouncement on reasonable doubt in *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). In *Victor*, the Supreme Court held:

---

1. For a complete recitation of the facts, see *State v. Reyes*, 2004 UT App 8, ¶¶ 2–13, 84 P.3d 841.

The beyond a reasonable doubt standard is a requirement of due process, *but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.* Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, ... *the Constitution does not require that any particular form of words be used* in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury.

*Id.* at 5, 114 S.Ct. 1239 (emphasis added) (citations omitted).

¶ 7 The court of appeals contrasted the Supreme Court's guidance on reasonable doubt with ours in *Robertson. Robertson,* which has been our sole occasion to review a "beyond a reasonable doubt" instruction since the Supreme Court handed down *Victor,* did not acknowledge the existence of *Victor.* Instead, we ratified and applied a three-part evaluative model first suggested by Justice Stewart in his dissent in *State v. Ireland,* 773 P.2d 1375, 1380–82 (Utah 1989) (Stewart, J., dissenting). *Robertson* described the test as follows:

First, "the instruction should specifically state that the State's proof must obviate all reasonable doubt." Second, the instruction should not state that a reasonable doubt is one which "would govern or control a person in the more weighty affairs of life," as such an instruction tends to trivialize the decision of whether to convict. Third, "it is inappropriate to instruct that a reasonable doubt is not merely a possibility," although it is permissible to instruct that a "fanciful or wholly speculative possibility ought not to defeat proof beyond a reasonable doubt."

*Robertson,* 932 P.2d at 1232 (citations omitted).

¶ 8 The court of appeals hewed tightly to the *Robertson* test in assessing Mr. Reyes's challenge. It held that the reasonable doubt instruction given the jury in Mr. Reyes's trial failed the first and third *Robertson* elements, and it accordingly remanded for a new trial.

*Reyes,* 2004 UT App 8 at ¶¶ 21–22, 84 P.3d 841. The court of appeals reached its holding reluctantly, agreeing with the State that the rigor of the *Robertson* test could not be reconciled with *Victor's* expansive approach to the content of reasonable doubt instructions. *Id.* at ¶ 21.

¶ 9 The court of appeals also concluded that the trial court erred when it did not repeat the preliminary jury instructions at the close of evidence. *Id.* at ¶ 24. The court read Utah Rule of Criminal Procedure 17(g)(6) to unambiguously require that the jury should be instructed " '[w]hen the evidence is concluded and at any other appropriate time.' " *Id.* (quoting Utah R.Crim. P. 17(g)(6)). It interpreted this language to mandate a repetition of all instructions vital to the defendant's rights at the conclusion of evidence irrespective of when or how the court had previously delivered those instructions. However, the court of appeals held that this error was harmless because there was no likelihood that, had the trial court repeated the preliminary instructions at the close of evidence, the verdict would have been any different. Both parties petitioned for certiorari, which we granted.

## STANDARD OF REVIEW

¶ 10 "On certiorari, we review the court of appeals'[s] decision for correctness, giving its conclusions of law no deference." *State v. Geukgeuzian,* 2004 UT 16, ¶ 7, 86 P.3d 742.

## ANALYSIS

### I. UTAH'S REASONABLE DOUBT INSTRUCTION

¶ 11 No person accused in the United States may be convicted of a crime unless each element of the offense has been proven beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Supreme Court has assigned this standard of proof constitutional status, linking it to both the Fifth Amendment right to due process of law and the Sixth Amendment right to a jury trial. *Sullivan v. Louisiana,* 508 U.S. 275, 278, 113

S.Ct. 2078, 124 L.Ed.2d 182 (1993); *Winship*, 397 U.S. at 362, 364, 90 S.Ct. 1068. The degree of certainty of guilt that we insist be held by those entrusted with judging the fate of persons charged with crimes before we will permit the State to wield its power to punish is not only a measure of evidence, but also in a more fundamental sense a gauge of our nation's conscience. The measure of certainty the law demands before finding guilt reflects the balance we are willing to strike between ensuring that all of the guilty are brought to justice and preventing the conviction and punishment of the innocent. Blackstone set an enduring benchmark for the measure of certainty required to convict in a civilized society when he stated that "the law holds that it is better that ten guilty persons escape than that one innocent suffer." 4 William Blackstone, *Commentaries* *27, *quoted in Coffin v. United States,* 156 U.S. 432, 456, 15 S.Ct. 394, 39 L.Ed. 481 (1895).

¶ 12 Although Blackstone expresses a moral ideal of justice which claims few detractors, his terse pronouncement on the State's burden of proof still leaves unanswered the question of what degree of satisfaction a juror must have with the quality and quantity of evidence before finding a defendant guilty. That we have settled on "beyond a reasonable doubt" as an answer does not fully relieve the unease courts have felt over the imprecision of this time-honored standard. The nagging sense that the law can and should "do better" than merely instruct jurors that they must find guilt beyond a reasonable doubt accounts for a long quest to formulate a clearer, more concise, and more understandable reasonable doubt jury instruction. For the most part, the role of this court, like that of most appellate courts, has been as a critic of reasonable doubt instructions. In keeping with the responsibilities of an appellate court, our contributions to the attainment of an ideal "beyond a reasonable doubt" instruction have appeared in the form of periodic piecemeal pronouncements approving or rejecting words, phrases, or concepts that litigants have chosen to bring to us on appeal. As the court of appeals's struggle with *Robertson* aptly confirms, this process has not produced a track record of steady or swift evolutionary progress.

¶ 13 The United States Supreme Court has followed an approach similar to ours. Although having granted the standard of "beyond a reasonable doubt" a constitutional pedigree, the Supreme Court has done little to provide direction for its integration into the day-to-day operation of the criminal justice system. As *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), makes clear, the Court has instead elected to sanction great flexibility in the manner in which the concept of "beyond a reasonable doubt" is communicated to juries. *See id.* at 5, 114 S.Ct. 1239 ("So long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt ... the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.").

¶ 14 Because it provides useful context for our discussion of the "beyond a reasonable doubt" and sets out the standard of review that we apply in place of *Robertson,* we take a closer look at *Victor.* *Victor* came to the Supreme Court as a consolidated review of two challenges to the content of "beyond a reasonable doubt" jury instructions, one from California and one from Nebraska. *Id.* at 6, 114 S.Ct. 1239. The Court affirmed the constitutionality of both instructions. *Id.* The majority was persuaded that, when the instructions were considered as a whole, there was not a reasonable likelihood that the jury applied the instructions in a manner resulting in a finding of guilt based on a lesser standard than beyond a reasonable doubt. *Id.* at 14–17, 21–22, 114 S.Ct. 1239.

¶ 15 The Supreme Court had previously extended to the states its declaration that the "beyond a reasonable doubt" standard is a necessary element of federal due process. *Sullivan,* 508 U.S. at 278, 113 S.Ct. 2078. Still, citing its lack of supervisory authority over state courts, the *Victor* Court stopped short of announcing a definitive reasonable doubt instruction for use in state courts. 511 U.S. at 6, 114 S.Ct. 1239. Rather, it reiterated that the demands of due process are met when, " 'taken as a whole, the instructions correctly conve[y] the concept of reasonable

doubt to the jury.' " *Id.* (quoting *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954)). The concept of reasonable doubt can be communicated in many ways as "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Id.* at 5, 114 S.Ct. 1239 (citations omitted).

### A. The State's Challenge to the Reasonable Doubt Instruction

¶ 16 According to the State, this court has lost touch with the reasonable doubt directives of the United States Supreme Court. In the State's view, we have strayed from fidelity to constitutional principles by forsaking the linguistic latitude in the formulation of reasonable doubt instructions approved by the Supreme Court in favor of what the State characterizes as the mechanical and unworkable *Robertson* test.

¶ 17 In this case, the court of appeals found that the trial court's reasonable doubt instructions failed the *Robertson* test and rejected them. *Reyes*, 2004 UT App 8 at ¶ 22, 84 P.3d 841. The State does not fault the court of appeals for this holding, noting that it took pains to distance itself from the outcome when it stated that, "[a]lthough [the *Robertson*] test may be constitutionally flawed, it is not within our power to overrule it." *Id.*

¶ 18 The *Robertson* test would not be "constitutionally flawed" were it merely to impose restrictions on permissible language that could be used to define "beyond a reasonable doubt," as *Victor* expressly recognized that countless constitutionally permissible "beyond a reasonable doubt" formulations could be crafted. *Victor*, 511 U.S. at 5–6, 114 S.Ct. 1239. *Victor* also expressly approved the bare charge that the jury find guilt beyond a reasonable doubt, unadorned by any supplemental definition at all. *Id.* Thus, the *Robertson* test could be constitutionally defective only if one or more of its three elements required Utah courts to incorporate language in their "beyond a reasonable doubt" instructions that were at odds with *Victor's* injunction that instructions not create a reasonable likelihood that " 'a reasonable juror could

have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.' " *Id.* at 6, 114 S.Ct. 1239 (quoting *Cage v. Louisiana*, 498 U.S. 39, 41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990)).

¶ 19 Mr. Reyes has challenged the reasonable doubt instruction in his case under the United States Constitution. He has not raised claims under the Utah Constitution. Thus, we, like the court of appeals, restrict our inquiry to the federal constitution. This limitation, however, is of little consequence here, inasmuch as none of our decisions that address the "beyond a reasonable doubt" standard have turned on an interpretation of the Utah Constitution. We readily concede that neither *Robertson* nor its predecessors draw upon, account for, or explain their relationship to the body of United States Supreme Court law on the subject of reasonable doubt. Implicit in our "beyond a reasonable doubt" cases, however, is the understanding that they are to be properly measured against the standards established by the Supreme Court.

¶ 20 This is not to say that *Victor*, or any other Supreme Court case addressing reasonable doubt for that matter, contains clear directions to those charged with drafting "beyond a reasonable doubt" jury instructions. As the State acknowledges, the themes of Supreme Court reasonable doubt jurisprudence are broadly stated and include a reluctance to impose upon state courts a script for a national reasonable doubt instruction; an acknowledgment that the English language enjoys sufficient richness and variety in its storehouse of words to permit many formulations for proof beyond a reasonable doubt that correctly convey its meaning; and a conviction that even words that in isolation might be constitutionally offensive may be rehabilitated when considered in their context. *See id.* at 5–6, 8–15, 114 S.Ct. 1239.

¶ 21 Given the structure and rationale of the Supreme Court's "beyond a reasonable doubt" jurisprudence, its constraints on this court are few. We are, of course, forbidden to approve reasonable doubt language that the Supreme Court has categorically rejected. Yet only once has the Supreme Court

held a reasonable doubt instruction to violate the Due Process Clause, and that case highlights the difficulties associated with keeping faith with the Court's guidelines. *See Cage,* 498 U.S. at 40–41, 111 S.Ct. 328. In *Cage,* the Court held that the words "substantial" and "grave," when used to describe the degree of doubt necessary to require acquittal, unconstitutionally diminished the State's burden by overstating the quantum of uncertainty that "substantial" and "grave" created a reasonable doubt. *Id.*

¶ 22 Following *Cage,* a court may have reasonably concluded it deployed either "substantial" or "grave" into a reasonable doubt instruction at its peril. This did not, however, prove to be the case. *Victor* redeemed "substantial." 511 U.S. at 19–21, 114 S.Ct. 1239. Writing for six justices, Justice O'Connor conducted a detailed contextual parsing of Mr. Victor's jury instruction, which contained the term "substantial doubt," and concluded that when it was used to distinguish a form of doubt from mere "fanciful conjecture," *id.* at 20, 114 S.Ct. 1239, it was sufficiently clear that the intended meaning of "substantial" was "not seeming or imaginary," and not the offending that "specified to a large degree" meaning found in *Cage, id.* at 9, 114 S.Ct. 1239. As the fate of the word "substantial" illustrates, the work of gauging the constitutionality of a reasonable doubt jury instruction is highly context-dependent. For this reason, it is unproductive to cull from an instruction certain words and phrases and make claims either for or against the constitutionality of a jury instruction based on the Supreme Court's response to their use in a challenged instruction.

¶ 23 The Supreme Court's approval of providing no definition of "beyond a reasonable doubt" further complicates the task of identifying and applying federal constitutional standards to reasonable doubt instructions. That a jury may return a constitutionally-sanctioned verdict either unaided by any instruction defining reasonable doubt whatsoever, or one guided by instructions constructed in diverse ways, seems to suggest that the Supreme Court is engaging in a form of legal agnosticism—conceding that an ideal definition of reasonable doubt may exist, but despairing that any one will ever know what it looks like.

## B.   Turning Away From "Obviate all Reasonable Doubt"

■ ¶ 24 Against this backdrop, we turn to the instruction to which Mr. Reyes takes exception. The court of appeals felt constrained to reject the "beyond a reasonable doubt" instruction used in Mr. Reyes's trial because they failed to satisfy the *Robertson* requirements that the State must "obviate all reasonable doubt" and that it must avoid use of the phrase "reasonable doubt cannot merely be a possibility." *Reyes,* 2004 UT App 8 at ¶¶ 19, 22, 84 P.3d 841. The court of appeals applied two standards of review. *Id.* at ¶¶ 14, 16. First, it reviewed under a nondeferential correction of error standard the question of whether the reasonable doubt jury instruction properly applied the law set out in *Robertson.* *Id.* at ¶ 14. It then assessed whether the failure to conform to the *Robertson* test was a "structural error" infringing on Mr. Reyes's guarantee of due process. *Id.* at ¶ 16.

¶ 25 The court of appeals found merit in Mr. Reyes's claim that the trial court erred when it failed to expressly instruct that the State's proof must "obviate all reasonable doubt" as mandated by *Robertson.* *Id.* at ¶ 19. The "obviate all reasonable doubt" test found life in Justice Stewart's dissent in *State v. Ireland,* 773 P.2d 1375, 1380–82 (Utah 1989) (Stewart, J., dissenting). There, Justice Stewart took issue with an instruction that equated "beyond a reasonable doubt" with "an abiding conviction of the truth of the charge." *Id.* He reasoned that since the standard to be applied is "beyond a reasonable doubt," it followed that any definition of the standard must reference the obstacle—reasonable doubt—to be overcome by the evidence, and must convey the principle that the State must surmount the obstacle of reasonable doubt to justify a conviction. *Id.* The "obviate all reasonable doubt" concept appears to derive from a fear that in ascertaining the conviction of the truth of a charge against a defendant, a juror might misapply the "beyond a reasonable doubt" standard

unless she is required to search out, confront, and defeat reasonable doubt with evidence.

¶ 26 Insightful and important as Justice Stewart's image of "beyond a reasonable doubt" may be, his suggestion that the jury be instructed to "obviate all reasonable doubt" is both linguistically opaque and conceptually suspect. Not every jury will confront evidence in its deliberations sufficient to create a reasonable doubt. The notion of "obviating" doubt is cumbersome at best where proof is scant or lacking in credibility. In these instances, a description of "beyond a reasonable doubt" that asks jurors to rate the magnitude of their conviction concerning the strength of the evidence imparts a more accurate and useful concept of "beyond a reasonable doubt" than does a construct that requires jurors to identify doubts and assess whether the evidence overcomes them. A universal application of the notion that the State must "obviate all reasonable doubt" can be achieved only by tying it to the concept of the presumption of innocence. If innocence is thought of as an array of inchoate reasonable doubts that the State must overcome to attain a conviction, it follows that the State must "obviate reasonable doubts" in every case. We do not, however, endorse this unwieldy view of the presumption of innocence.

¶ 27 The process suggested by the "obviate all reasonable doubt" standard is also flawed because, contrary to its purpose, it tends to diminish the degree of proof necessary to convict and in that respect violates the *Victor* standard. The "obviation" of doubt contemplates a two-step undertaking: the identification of the doubt and a testing of the validity of the doubt against the evidence. This process suggests a back and forth disputation of a doubt's merits, all to the end of determining whether the evidence is sufficient to "obviate" the doubt. The "beyond a reasonable doubt" standard does not, however, condition a conclusion that a doubt is reasonable on an ability either to articulate the doubt or to state a reason for it. An unarticulated conviction that the State has failed to meet its burden of proof will serve as a legitimate basis to acquit.

¶ 28 To the extent that the *Robertson* "obviate" test would permit the State to argue that it need only obviate doubts that are sufficiently defined, the test works to improperly diminish the State's burden. Writing in the Notre Dame Law Review, Professor Steve Sheppard criticized the expanding prominence of the requirement that doubts be articulated. Steve Sheppard, *The Metamorphoses of Reasonable Doubt: How Changes in the Burden of Proof Have Weakened the Presumption of Innocence,* 78 Notre Dame L.Rev. 1165 (2003). Professor Sheppard summarized the central vice of this trend this way:

> A troubling conclusion that arises from the difficulties of the requirement of articulability is that it hinders the juror who has a doubt based on the belief that the totality of the evidence is insufficient. Such a doubt lacks the specificity implied in an obligation to "give a reason," an obligation that appears focused on the details of the arguments. Yet this is precisely the circumstance in which the rhetoric of the law, particularly the presumption of innocence and the state burden of proof, require acquittal.

*Id.* at 1213.

¶ 29 Central to our reconsideration of the merits of the "obviate all reasonable doubt" element of *Robertson* is our belief that the exacting demands of the "beyond a reasonable doubt" standard can be clearly and fairly communicated through an affirmative description of the degree of conviction that must be attained by a juror based on the evidence. We see little to be gained by including within a "beyond a reasonable doubt" instruction the potentially confusing concept that every defendant is entitled to a presumption of reasonable doubt, which the State's evidence must obviate.

¶ 30 Because we conclude that "the obviate all reasonable doubt" element of the *Robertson* test carries with it the substantial risk of causing a juror to find guilt based on a degree of proof below beyond a reasonable doubt, we expressly abandon it.

### C. Reasonable Doubt Cannot be a "Mere Possibility"

¶ 31 We turn next to Mr. Reyes's claim that the "beyond a reasonable doubt"

instruction in his case offended the *Robertson* proscription against the phrase "reasonable doubt cannot merely be a possibility." This element of *Robertson* was also the product of Justice Stewart's dissent in *Ireland.* *Robertson,* 932 P.2d at 1232 (citing *Ireland,* 773 P.2d at 1380–82) (Stewart, J., dissenting). Justice Stewart's fundamental objection to excluding "mere possibility" from eligibility for consideration as reasonable doubt was that the term "possibility," standing alone, fails to disclose its location on the continuum marked at its extremes by impossibility and certainty. *Ireland,* 773 P.2d at 1381 (Stewart, J., dissenting). We stand by this observation.

¶ 32 *Robertson* correctly noted that neither Justice Stewart's dissent in *Ireland* nor the *Robertson* test it spawned outlawed all references to "possibilities" in defining reasonable doubt. *Robertson,* 932 P.2d at 1232–33. To the contrary, *Robertson* endorsed Justice Stewart's approval of language that " 'fanciful or wholly speculative possibility ought not to defeat proof beyond a reasonable doubt.' " *Id.* (quoting *Ireland,* 773 P.2d at 1382) (Stewart, J., dissenting).

¶ 33 When complemented by appropriate qualifying and explanatory language, the use of the term "mere possibility" in the definition of doubt does not create a reasonable likelihood that the jury would apply an unconstitutionally diminished standard of proof. In fact, as the court of appeals observed, one of the instructions at issue in *Victor* survived a challenge to its definition of reasonable doubt as "not a mere possible doubt." *Reyes,* 2004 UT App 8 at ¶ 18, 84 P.3d 841 (quoting *Victor,* 511 U.S. at 7, 114 S.Ct. 1239). Here, the exclusion of doubt which is " 'merely possible' " from consideration as a reasonable doubt is followed by the explanatory phrase " 'since everything in human affairs is open to some possible or imaginary doubt.' " This language effectively neutralizes the risk that the reference to a "mere possibility" will improperly lead a juror to apply a standard of proof lesser than beyond a reasonable doubt.

¶ 34 We conclude that the requirement that the jury be instructed that it must "obviate all reasonable doubt" before it may find guilt beyond a reasonable doubt is flawed and must be abandoned. The instruction given to Mr. Reyes's jury appropriately addressed the concept of "possibility" in gauging the reasonableness of doubt. We therefore reverse the court of appeals on this issue and affirm Mr. Reyes's conviction.

### D. A "Clear, Straightforward and Accurate" Definition of Reasonable Doubt

¶ 35 Although we have allied ourselves with the Supreme Court in our skepticism of the value of "talismatic phraseology" to define the "beyond a reasonable doubt" standard, *State v. Young,* 853 P.2d 327, 347 (Utah 1993), we are convinced that the time has come to provide express guidance to trial courts concerning the contents of a "beyond a reasonable doubt" instruction. We are moved to take this action for several reasons. First, there exists a substantial inventory of reasonable doubt formulations that have gained either express or tacit ratification by this court and other state and federal courts. There is an understandable tendency to insert within a "beyond a reasonable doubt" instruction multiple definitions in the hope that singularly or collectively they may bring to jurors clarity of understanding. Such a practice is just as likely to bring about the real but unintended result of making reasonable doubt less comprehensible. An instruction larded with multiple definitions of reasonable doubt may also convey the incorrect message that a doubt must survive review under each definition before it may qualify as a "reasonable doubt."

¶ 36 We have earlier explained our dissatisfaction with the historical approaches to appellate review of "beyond a reasonable doubt." In general, the experience of appellate review of "beyond a reasonable doubt" instructions has been one marked by the enterprise of winnowing out ill-conceived notions of reasonable doubt. Left to follow this historical practice, we are doubtful that a serviceable "reasonable doubt" instruction will ever emerge.

¶ 37 We therefore exercise our supervisory authority to promulgate for use in the courts

of this state the instruction proposed by the Federal Judicial Center that reads:

> "The [State] has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the [State's] proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

*Victor,* 511 U.S. at 27, 114 S.Ct. 1239 (Ginsburg, J., concurring in part and concurring in the judgment) (quoting Federal Judicial Center, Pattern Criminal Jury Instructions 17–18 (instruction 21) ).

¶ 38 The use of this instruction was advocated by Justice Ginsburg in her concurring opinion in *Victor.* *Id.* She described it as "clear, straightforward, and accurate." *Id.* at 26, 114 S.Ct. 1239. We agree. Moreover, in the span of time since its promulgation in 1987, the instruction has enjoyed a positive reception.[2] We believe that the consistent application of this instruction resolves any uncertainty in the phrase "beyond a reasonable doubt" and will benefit jurors while setting forth a balanced charge to the State and defendants. Yet, we note that history has proven that defining "beyond a reasonable doubt" is a process of evolution and adaptation, and in the future new definitions may emerge. Moreover, we recognize that instructions that once enjoyed widespread acceptance became anachronistic and inaccurate due to shifting definitions of terms.[3] In recognition of this possibility, we authorize use of Federal Judiciary Center Instruction 21 in Utah courts as a "safe harbor" instruction, but we stop short of disqualifying as constitutionally defective other reasonable doubt instructions that conform to the principles announced in this opinion.

## II. MR. REYES'S APPEAL ON FAILURE TO REINSTRUCT THE JURY

■ ¶ 39 We granted Mr. Reyes's cross-petition for certiorari to review the court of

---

2. *See, e.g., State v. Prasertphong,* 206 Ariz. 70, 75 P.3d 675, 696 (2003); *Arizona v. Portillo,* 182 Ariz. 592, 898 P.2d 970, 974 (1995) (adopting and requiring use of the Federal Judicial Center's Jury Instruction 21 as advocated by Justice Ginsburg because "the Federal Judicial Center's proposed definition most fairly and accurately conveys the meaning of reasonable doubt"); *Mills v. State,* 732 A.2d 845, 852 (Del.1999) (upholding the jury instruction given, which was "almost identical to the model explanation proposed by the Federal Judicial Center"); *Smith v. United States,* 709 A.2d 78, 81 (D.C.1998) (observing that "the approval of a single instruction for use in all criminal trials will not intrude unduly into the area of trial court discretion, for the standard of proof beyond a reasonable doubt is applicable to every criminal trial and is not subject to change because of the evidence or legal theories presented.") *Winegeart v. State,* 665 N.E.2d 893, 902 (Ind.1996) (recommended the Federal Jury Instruction 21 stating that "[a] substantial improvement in effective communication may be achieved by utilization of the Federal Judicial Center's proposed instruction").

3. *See, e.g., Victor,* 511 U.S. at 8, 114 S.Ct. 1239. There the Court reviewed the reasonable doubt instruction used in Mr. Sandoval's case. The instruction was set forth in 1850 in *Commonwealth v. Webster,* 59 Mass. 295, 320 (1850), and for almost one hundred years was heralded as "probably the most satisfactory definition ever given to the words 'reasonable doubt' in any case known to criminal jurisprudence." *People v. Strong,* 30 Cal. 151, 155 (1866). The instruction utilized the phrase "moral certainty," which caused the *Victor* Court some concern because, as Justice O'Connor wrote, the phrase in Mr. Sandoval's case did not likely have the same textual meaning as when it was written in 1850. *Victor,* 511 U.S. at 13, 114 S.Ct. 1239. She observed that "[w]ords and phrases can change meaning over time: A passage generally understood in 1850 may be incomprehensible or confusing to a modern juror." *Id.* The Court responded that it did not condone the phrase "moral certainty," but felt that overall it did not render the reasonable doubt instruction infirm. *Id.* at 16–17, 114 S.Ct. 1239.

appeals's determination that although the trial court erred when it failed to repeat its recitation of jury instructions at the close of the evidence, the error was harmless. He insists that, as an error of constitutional dimension, the failure to reinstruct the jury could not be harmless. We affirm the result reached by the court of appeals that Mr. Reyes was not entitled to a new trial based on the timing of the trial court's recitation of jury instructions, but do so on the grounds that the trial court did not commit error.

¶ 40 The court of appeals applied a plain meaning analysis to Utah Rule of Criminal Procedure 17(g)(6). *State v. Reyes*, 2004 UT App 8, ¶ 24, 84 P.3d 841. Rule 17(g)(6) instructs that "[w]hen the evidence is concluded and at any other appropriate time, the court shall instruct the jury." Utah R.Crim. P. 17(g)(6). The court of appeals concluded that the text of the rule required that the trial court repeat the recitation of preliminary jury instructions at the close of the evidence. *Reyes*, 2004 UT App 8 at ¶¶ 23–24, 84 P.3d 841. It therefore held that the trial court erred in refusing Mr. Reyes's request for a second recitation of the instructions at the conclusion of evidence. *Id.* at ¶ 26. Having determined that the trial court violated rule 17(g)(6), the court of appeals reasoned that it need not take up Mr. Reyes's claim that the failure to comply with rule 17(g)(6)'s timing requirements for reciting instructions denied him due process. *Id.* at ¶ 26 n. 7. It then analyzed the degree of prejudice the error caused Mr. Reyes. *Id.* at ¶ 27. Using the standard set out in rule 30 of the Utah Rules of Criminal Procedure, as interpreted by *State v. Knight*, 734 P.2d 913, 920 (Utah 1987), the court of appeals found the error harmless because the likelihood of a different outcome was not sufficiently high to undermine confidence in the verdict. *Id.* at ¶¶ 27–28.

¶ 41 Mr. Reyes does not challenge the court of appeals's conclusion that the trial court's error did not undermine confidence in the guilty verdict rendered against him. Rather, he contends that the trial court's error was constitutional in its nature and structural in its magnitude and, thus, its gravity was more substantial than the court of appeals acknowledged. For this reason, Mr. Reyes argued that the harmless error test employed by the court of appeals was not sufficiently rigorous. Where a defendant's constitutional rights have been infringed, prejudice should be presumed or, at a minimum, the burden should be placed on the State to prove the absence of prejudice beyond a reasonable doubt. Thus, Mr. Reyes's challenge to the propriety of the court of appeals's standard for evaluating harmlessness is inextricably connected to the nature of the right associated with the timing of the recitation of jury instructions.[4]

¶ 42 Based on our assessment of the totality of the circumstances surrounding the trial court's presentation of instructions to the jury, we hold that the timing of the trial court's recitation of jury instructions complied with rule 17(g)(6). Since there was no error, we need not review the court of appeals's assessment of the harmfulness of the error.

¶ 43 Rule 17(g)(6) of the Utah Rules of Criminal Procedure provides that "[w]hen the evidence is concluded and at any other appropriate time, the court shall instruct the jury." Utah R.Crim. P. 17(g)(6). Contrary to the court of appeals's determination that this provision is unambiguous, we can extract several plausible interpretations of its text. The interpretative divide occurs at the term "instruct." One reasonable interpretation of rule 17(g)(6) is the one embraced by the court of appeals. Under its rendition of the text, the rule mandates a complete rereading of all instructions when the evidence is con-

4. We note that neither the State nor Mr. Reyes sought certiorari to challenge the court of appeals's determination that the trial court erred when it failed to repeat its recitation of the preliminary instructions at the close of the evidence. However, our consideration of this issue is made permissible, even inevitable, by the formulation of Mr. Reyes's cross-petition for certio-

rari review. By urging us to consider whether the trial court's jury instruction method resulted in a violation of his constitutional rights, Mr. Reyes has asked us to examine the magnitude of the trial court's error. This inquiry logically and necessarily includes the possibility that we might conclude that no error occurred.

cluded. This interpretation can be traced to the assumption that the word "instruct," although a verb, also connotes a noun defined as the entire body of jury instructions. The court of appeals finds comfort in this reading because it inoculate the rule against the mischief of permitting a trial court to comply with its terms by merely reading one instruction at the close of the evidence. *Reyes,* 2004 UT App 8 at ¶ 24, 84 P.3d 841.

¶ 44 The interpretation chosen by the court of appeals to sidestep one absurd result exposes the rule to an equally incongruous one. A complete repetition of instructions would force a judge to read and the jury to endure instructions, such as those describing "order of presentation" or "note-taking", that have no relevance at the close of the trial and have no bearing on law applicable to the case or to the jury's responsibilities upon retiring to deliberate. A categorical requirement that all instructions be repeated at the close of evidence would strip the trial judge of any discretion in selecting timely and helpful directions to the jury and would likely tend to distract the jury and dilute its attention to critical substantive and procedural guidance present in other instructions. In implicit recognition of the difficulties with a categorical and nondiscretionary reading of rule 17(g)(6), the court of appeals first embraced, but then receded from the requirement that a trial court reread at the close of the evidence all of the instructions it had previously delivered. While at first indicating that a trial court would violate rule 17(g)(6) "by giving the jury some of its instructions before opening statements (an "appropriate time") and the rest of its instructions before closing arguments," the court modified its view by the time it announced its holding. *Id.* There, it insisted only that the trial court repeat only those instructions that relate to the defendant's fundamental rights. *Id.* It is not clear to us how this retreat from an "all or nothing" interpretation of rule 17(g)(6) can be squared with a plain meaning interpretation of the rule that finds its text unambiguous.

¶ 45 A second plausible interpretation of rule 17(g)(6) can be derived by restricting the meaning of "instruct" to its verb form, de-scribing the act of reciting an instruction. This interpretation would require trial judges to provide some instruction when the evidence is concluded, but would not offer guidance on the nature and extent of the instructions to be given at that stage of the trial. In our view, an interpretation of rule 17(g)(6) that leaves undefined the scope of instructions that the court must recite at the close of the evidence is preferable to a rendering of the rule that, in its attempt to achieve certainty and uniformity in the presentation of instructions, will accomplish the opposite. Trial judges faced with the obligation to repeat all instructions previously recited at the conclusion of the evidence would have good reason to opt to avoid giving preliminary instructions at all rather than risk the confusion and distraction of repeating instructions ill-suited for that occasion. We have scant reservation about resolving the ambiguity created by construing "instruct" as a verb by ceding to trial judges the discretion to determine the appropriate instructions to deliver to the jury at the close of the evidence.

¶ 46 Although we agree generally with the court of appeals's concern that the jury be instructed "on matters of law vital to the rights of a defendant" at the close of the evidence, we do not read rule 17(g)(6) to demand the repetition of even "vital rights" instructions at the close of the evidence in all instances. In a trial of short duration or where the trial judge has had occasion to provide instruction concerning one or more "vital rights" shortly before the close of the evidence, the jury's comprehension of those "vital rights" may be enhanced by the judicious exercise of the judge's discretion in fashioning close of evidence instructions which take a form other than a rereading of instructions previously delivered.

¶ 47 The paramount goal that guides the timing of the recitation of an instruction is jury comprehension. The importance of jury comprehension is evident from the text of rule 19 of the Utah Rules of Criminal Procedure. *See* Utah R.Crim. P. 19. In addressing the topic of jury instructions, rule 19 was substantially rewritten in 2001 as part of a comprehensive jury reform initiative under-

taken by this court and the Utah Judicial Council. The new rule 19 instructs:

(a) After the jury is sworn and before opening statements, the court may instruct the jury concerning the jurors' duties and conduct, the order of proceedings, the elements and burden of proof for the alleged crime, and the definition of terms. The court may instruct the jury concerning any matter stipulated to by the parties and agreed to by the court and any matter the court in its discretion believes will assist the jurors in comprehending the case. Preliminary instructions shall be in writing and a copy provided to each juror. At the final pretrial conference or at such other time as the court directs, a party may file a written request that the court instruct the jury on the law as set forth in the request. The court shall inform the parties of its action upon a requested instruction prior to instructing the jury, and it shall furnish the parties with a copy of its proposed instructions, unless the parties waive this requirement.

(b) During the course of the trial, the court may instruct the jury on the law if the instruction will assist the jurors in comprehending the case. Prior to giving the written instruction, the court shall advise the parties of its intent to do so and of the content of the instruction. A party may request an interim written instruction.

*Id.* at 19(a)-(b) (2003).

¶ 48 The common objective of these provisions is jury comprehension. The means chosen to pursue the end of better jury comprehension is a grant of expanded flexibility in the content of jury instructions and the timing of their recitation to the jury. It is impossible for us to harmonize the pragmatic tone of rule 19 with a hidebound interpretation of rule 17, and we decline to do so.

¶ 49 The trial judge's decision to forego the repetition of jury instruction in this case was well within the bounds of discretion afforded by rule 17 and rule 19. As noted by the court of appeals, less than twenty-four hours separated the trial court's reading of the preliminary instructions from the conclusion of the evidence. In addition, the jury was provided with a written copy of every in-

struction. Accordingly, we affirm the court of appeals's result on the issue of the trial court's timing of its recitation of jury instructions, but on different grounds.

## CONCLUSION

¶ 50 For the reasons detailed herein, we reverse the court of appeals and reinstate Mr. Reyes's conviction. We abandon *Robertson's* insistence that the jury be instructed that to return a guilty verdict it must "obviate all reasonable doubts." We authorize for use in our court the Federal Judicial Center's Pattern Criminal Jury Instruction 21. We also affirm on alternate grounds the court of appeals's refusal to grant Mr. Reyes relief on his challenge to the timing of the jury instructions.

¶ 51 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.