2005 UT App 546

**STATE of Utah, Plaintiff and Appellee,**

v.

**Dominique P. HERNANDEZ, Defendant and Appellant.**

**No. 20020879–CA.**

Court of Appeals of Utah.

Dec. 15, 2005.

Elizabeth Hunt, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, P.J., ORME, and THORNE, JJ.

## OPINION

BILLINGS, Presiding Judge:

¶1 Defendant P. Dominique Hernandez appeals his jury conviction of aggravated robbery pursuant to Utah Code section 76–6–302. *See* Utah Code Ann. § 76–6–302 (2004). Defendant contends he deserves a new trial because (1) the trial court gave a defective reasonable doubt jury instruction and (2) Defendant received ineffective assistance of counsel at trial. We reverse and remand for a new trial.

## BACKGROUND

¶2 At about 6:30 p.m. on December 5, 2001, John Nieser was at Freeway Transmission in Salt Lake City when a man approached him, stuck a gun in his face, and said, "Give me your wallet or else." Nieser

gave the man his wallet, which contained about $774 in cash. The robber then told Nieser to get back into the vehicle. He instructed Nieser to not follow him. The encounter lasted between four and five minutes. Although the immediate area was not well lit, there was a light directly across the street that Nieser testified was sufficient for him to see the robber. After the robbery, Nieser remained inside his vehicle for five or ten minutes to slow down his heart rate before calling the police. Nieser had suffered two heart attacks the prior year and was concerned about having another.

¶ 3 Nieser described his assailant as "a little Hispanic" male about twenty years old with a goatee. Nieser stated that the robber looked unshaven and that he stood about 5'7 or 5'8 and weighed between 130 and 160 pounds. Additionally, Nieser said the robber wore black baggy pants, a blue shirt with writing across the front, and white athletic shoes. Nieser also stated that after the robbery the robber fled east or south. Nieser originally reported that the robber's gun was black, but he later testified that the gun had silver on it. The Defendant is 5'4 and weighed 145 pounds one week after his arrest.

¶ 4 At about 6:39 p.m., Salt Lake County police officers Brede and McInnes were near the scene of the robbery when they heard dispatch report the crime and that the suspect was last reported fleeing south. They drove to the Flying J truck stop, located about a quarter mile south of the scene of the robbery. The officers found Defendant in an upstairs truckers' lounge at the Flying J.

¶ 5 Defendant was a male in his twenties with facial hair. He was wearing dark, baggy jeans, a blue sweatshirt or pullover with a hood, and white athletic shoes. The officers approached Defendant and asked if they could speak with him. Defendant agreed and they moved into an adjacent area. When the officers explained that Defendant matched the description of a suspect in a robbery that had recently occurred in the area, Defendant told them that he was waiting for a Western Union telegram. The officers asked Defendant whether he had a weapon, and Defendant replied that he did

not. When Officer McInnes asked if he could frisk Defendant, Defendant admitted that he had a gun in his waistband. The officers handcuffed Defendant and removed the gun—a loaded semi-automatic gun with a silver slide. Defendant told the officers that he had recently bought the gun from a truck driver.

¶ 6 The police officers took Defendant into custody and searched him. The officers did not find Nieser's wallet or money on Defendant's person, among Defendant's belongings, or in the Defendant's immediate vicinity.

¶ 7 Defendant claimed he had been at the Flying J truck stop for several hours. The police officers returned to the truckers' lounge to speak with potential witnesses. One witness stated that he had seen Defendant at about 5:15 p.m. and then again at 6:56 p.m. None of the individuals interviewed saw Defendant at the Flying J at the time of the robbery, although there were people in the area where the officers found Defendant that the officers did not interview.

¶ 8 The police then brought Nieser to the Flying J to see if he could identify the Defendant. Nieser sat in the back of the police vehicle while Defendant stood outside, about thirty to thirty-seven feet away from Nieser. Detective Wallace parked his car in front of Defendant and turned his lights on to illuminate Defendant. Wallace instructed Nieser to take his time, to look at all of Defendant's features, and to indicate whether he could positively identify Defendant as the robber. Nieser first asked Wallace to turn down the lights, as they were too bright. Nieser then told Wallace that he recognized Defendant— a Hispanic with "scraggly facial hair," who was wearing black baggy pants and white athletic shoes, and who was the height and weight of the suspect that Nieser had described earlier. However, Nieser noted that Defendant was wearing a different shirt than the robber. Wallace then asked the officers to lift up each of Defendant's shirts, one at a time, so that Nieser could see them. After the officers lifted up two of Defendant's shirts, Nieser identified the third shirt as the one the robber had been wearing. Nieser

then positively identified the Defendant as the robber.

¶ 9 After Nieser identified Defendant as the robber, Officer Ross delivered Defendant his Miranda rights. Defendant agreed to waive those rights and speak with Officer Ross. Defendant told Officer Ross that he was from out of town, and that after unsuccessfully trying to locate a friend in Salt Lake City, he had met a truck driver on Interstate 80 who had given him a gun to protect himself. Defendant denied committing a robbery.

¶ 10 At trial, Nieser positively identified Defendant and the gun used in the robbery. The jury convicted Defendant. After sentencing, Defendant's new appellate counsel filed an appeal. Defendant's appeal included a motion pursuant to Utah Rule of Appellate Procedure 23B,[1] wherein this court remanded on Defendant's claims of ineffective assistance of counsel.

¶ 11 Following an evidentiary hearing, the trial court issued its findings of fact and conclusions of law, discussed below, regarding Defendant's ineffective assistance of counsel claim. The trial court concluded that trial counsel's failure to investigate potential defense witnesses prejudiced Defendant. Defendant appeals his conviction.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 12 Defendant argues the trial court committed plain error by providing a defective reasonable doubt jury instruction, and that, as a result, Defendant should receive a new trial. To demonstrate plain error, De-

fendant must establish that: (1) the error is "obvious"; and (2) the error is "of sufficient magnitude that it affects the substantial rights of a party." *See State v. Rudolph,* 970 P.2d 1221, 1226 (Utah 1998) (quotations and citation omitted).

■ ¶ 13 Defendant also contends that he should receive a new trial because his trial counsel provided ineffective assistance. "In ruling on an ineffective assistance claim following a [r]ule 23B hearing, 'we defer to the trial court's findings of fact, but review its legal conclusions for correctness.'" *State v. Bredehoft,* 966 P.2d 285, 289 (Utah Ct.App. 1998) (citation omitted).

## ANALYSIS

### I. Reasonable Doubt Jury Instruction

■ ¶ 14 Defendant first argues the trial court committed plain error by providing a reasonable doubt jury instruction that failed to meet those requirements set forth by the Utah Supreme Court in *State v. Robertson,* 932 P.2d 1219 (Utah 1997). Specifically, Defendant argues that jury instruction number fourteen[2] is defective because it does not contain *Robertson's* required phrase "that the State's proof must obviate all reasonable doubt." *Id.* at 1232 (quotations and citation omitted). Defendant also objects to the instruction's phrase "[r]easonable doubt is required, not doubt which is *merely possible,*" as proscribed by *Robertson. See id.* ("[I]t is inappropriate to instruct that a reasonable doubt is not *merely a possibility.*")˙ (emphases added) (quotations and citation omitted). The Utah Supreme Court's recent decision in

---

1. This rule states in relevant part: "A party to an appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel. The motion shall be available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." Utah R.App. P. 23B(a).

2. Instruction No. 14, entitled "Burden of Proof," reads as follows:

   All presumptions of law, independent of evidence, are in favor of innocence. A defendant is presumed innocent until proven guilty be-

yond a reasonable doubt. Where you are satisfied that a reasonable doubt exists as to a defendant's guilt, he/she is entitled to acquittal.

   The burden is upon the prosecution to prove the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt does not require proof to an absolute certainty. Reasonable doubt is required, not doubt which is merely possible, since everything in human affairs is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is a degree of proof that satisfies your mind and convinces your conscientious understanding. Reasonable doubt is doubt entertained by reasonable men and women and arises from the evidence, or lack of evidence in the case.

*State v. Reyes*, 2005 UT 33, 116 P.3d 305, puts Defendant's argument to rest.

¶ 15 In *State v. Reyes*, the court abandoned many of the requirements previously established in *Robertson. See id.* The court expressly abandoned the " 'obviate all reasonable doubt' element of the *Robertson* test" because the element "carries with it the substantial risk of causing a juror to find guilt based on a degree of proof below beyond a reasonable doubt." *Id.* at ¶ 30. Moreover, the court abandoned *Robertson's* proscription against the phrase "mere possibility," because when "followed by the explanatory phrase 'since everything in human affairs is open to some possible or imaginary doubt'.... This language effectively neutralizes the risk that ... a juror [might] apply a standard of proof lesser than beyond a reasonable doubt." *Id.* at ¶ 33. While jury instruction number fourteen uses the phrase "merely possible," it also contains the appropriate neutralizing phrase. Thus, in light of *Reyes*, we determine that the trial court did not plainly err by providing jury instruction number fourteen.[3]

## II. Ineffective Assistance of Counsel

■ ¶ 16 Defendant next argues that he should receive a new trial because trial counsel provided ineffective assistance. Defendant claims trial counsel was ineffective because trial counsel failed to investigate crucial defense witnesses. As a result, Defendant argues that trial counsel's ineffectiveness prejudiced Defendant and impacted the outcome of his trial. The trial court so determined on remand, and we agree.[4]

■ ¶ 17 To show ineffective assistance of counsel, Defendant must show that his counsel "(1) rendered deficient performance which fell below an objective standard of reasonable professional judgment, and (2) counsel's deficient performance prejudiced him." *State v. Chacon*, 962 P.2d 48, 50 (Utah 1998). Because courts "give trial counsel wide latitude in making tactical decisions," they "will not question such decisions unless there is no reasonable basis supporting them." *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996). Thus, to succeed on a claim of ineffective assistance of counsel, Defendant must "rebut the strong presumption that under the circumstances, the challenged action might be considered sound trial strategy." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (quotations and citations omitted).

¶ 18 Defendant argues that trial counsel was ineffective because he failed to investigate two witnesses identified by Defendant: Defendant's aunt, Amanda Hernandez (the Aunt); and Defendant's grandmother, Margaret Puebla (the Grandmother). Both of these witnesses would have testified with supporting documentation that they were on the phone with Defendant shortly before and immediately after the robbery occurred— placing Defendant on the phone at the Flying J within one minute of when the robbery occurred.

¶ 19 The Utah Supreme Court has held that

[i]f counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the "wide range of reasonable professional assistance." This is because a decision not to investigate cannot be considered a tactical decision. It is only after an adequate inquiry has been made that counsel can make a reasonable decision to call or not to call particular witnesses for tactical reasons.

---

3. Although in *State v. Reyes*, 2005 UT 33, 116 P.3d 305, the claims were raised under the United States Constitution and not the Utah Constitution, the limitation "is of little consequence here, inasmuch as none of our decisions that address the 'beyond a reasonable doubt' standard have turned on an interpretation of the Utah Constitution." *Id.* at ¶ 19. Thus, in this case, the *Reyes* court's decision applies to Defendant's claims pursuant to both the United States and Utah Constitutions.

4. Defendant also claims trial counsel was ineffective because he failed to take steps to exclude Defendant's criminal history; failed to make a motion to exclude unreliable eyewitness testimony; failed to make a motion to suppress the gun and Defendant's related statements; and allowed the admission of prejudicial material contained in Defendant's wallet. We do not reach Defendant's other claims due to our disposition.

*State v. Templin*, 805 P.2d 182, 188 (Utah 1991) (citations omitted). In *Templin*, the defendant provided his attorney with a list of prospective witnesses, but counsel did not contact several of the people on the list. The supreme court determined that "because defendant's trial counsel did not make a reasonable investigation into the possibility of procuring prospective defense witnesses," this met the first part of the test, *id.*, that trial counsel "rendered deficient performance which fell below an objective standard of reasonable professional judgment." *Chacon*, 962 P.2d at 50.

¶ 20 Likewise, after the rule 23B hearing in the instant case, the trial court's findings of fact and conclusions of law reflected the following:[5] (1) prior to trial, Defendant informed trial counsel of relatives who could serve as alibi witnesses; (2) while trial counsel may not have been given the specific names and contact information for the Aunt and the Grandmother, trial counsel had sufficient information before trial to investigate these witnesses but made no effort to locate and interview these witnesses until after trial;[6] (3) the Aunt would have testified that she was on the phone with Defendant from approximately 6:22 p.m. until 6:29 p.m. and that she had phone records verifying this call; (4) the Aunt also would have testified that during the phone call, Defendant indicated he was trying to get home to Wyoming and that he asked the Aunt's permission to charge a call to the Grandmother to the Aunt's phone bill and that the Aunt's phone bill reflects Defendant's phone call to the Grandmother on December 5, 2001, from 6:53 p.m. to 7:00 p.m.; and (5) the Grandmother would have testified that on December 5, 2001, Defendant called her asking for money to get home to Wyoming and that after the phone call, she wired him forty-five dollars through Western Union.

5. We commend the trial court for its careful and objective consideration of the evidence on remand and its thorough findings regarding why there was ineffective assistance in this case.

6. This is reflected in the trial court's findings of fact numbers 11 and 12. While the State concedes that there was sufficient information to identify the Grandmother, it argues the finding that trial counsel had sufficient information to

¶ 21 In light of these facts, we cannot say that trial counsel's decision not to call the witnesses was a tactical one because trial counsel did not make a reasonable inquiry into the witnesses' potential testimony. Accordingly, we determine that trial counsel's failure to investigate the Aunt and the Grandmother as potential witnesses for the defense constitutes "deficient performance which fell below an objective standard of reasonable professional judgment." *Chacon*, 962 P.2d at 50.

¶ 22 Defendant next contends that trial counsel's failure to investigate and call these witnesses prejudiced the outcome of his trial, thus necessitating a new trial. An ineffective assistance claim requires that Defendant show that his counsel "rendered deficient performance which fell below an objective standard of reasonable professional judgment" *and* that "counsel's deficient performance prejudiced him." *State v. Chacon*, 962 P.2d 48, 50 (Utah 1998)

¶ 23 On remand the trial court concluded that trial counsel's failure to investigate potential defense witnesses prejudiced Defendant. The trial court based its conclusion on its finding that the State's evidence showed the robbery was committed at a specific time, and it may have made a significant difference in the outcome of the trial if the Aunt, the Grandmother, and the phone records had been available because they would have established that Defendant was on the phone some distance from the scene of the robbery mere moments before the robbery was committed. The trial court also found the Aunt and the Grandmother to be crucial defense witnesses that would have given Defendant a much stronger defense than the one he presented to the jury. We agree.

¶ 24 Although the trial court correctly found that "[the Aunt] and [the Grandmother

identify the Aunt before trial was incorrect. However, we agree with the trial court that Defendant's identification of potential witnesses to trial counsel by family relationship such as "mother, aunt, grandmother" was sufficient for trial counsel to have at least investigated the whereabouts of the Aunt and, with minimal follow-up with Defendant or the Aunt, the Grandmother as well.

were] not technically alibi witnesses because their testimony would not have established that defendant was on the telephone with them at the same time the robbery was committed[,]" their testimony would have corroborated the defense's theory that Defendant was at the Flying J waiting for a Western Union delivery at the time of the robbery. The Aunt's and the Grandmother's testimonies would have placed Defendant at the Flying J as close as one minute before the robbery occurred. Their testimony would have made it less likely that a jury would have found Defendant was at Freeway Transmission at the time of the robbery—especially in light of the fact that neither Nieser's wallet nor his money were found on Defendant's person or in his vicinity when the officers seized him thirty minutes after the robbery and in light of the fact that Defendant was waiting for a Western Union delivery of forty-five dollars after a robbery in which he allegedly stole over seven hundred dollars. Thus, we agree with the trial court's conclusion that trial counsel's failure to investigate these witnesses prejudiced Defendant and impacted the outcome of his trial.

¶ 25 The State contends we should not conclude there was prejudice because it is unlikely a reasonable jury would have come to a different result given that Nieser provided a solid eyewitness identification of Defendant. However, Nieser's eyewitness identification was not so solid as to preclude a jury from reaching a different result. For example, Nieser described Defendant as "a little Hispanic," where Defendant does not physically appear to be Hispanic. Nieser also stated that his assailant stood 5'7 or 5'8, yet Defendant is 5'4. Furthermore, even if Nieser's identification of Defendant is viewed as solid, we still think there is a reasonable probability that the jury would have reached a different outcome had the Aunt and the Grandmother testified and had the phone records evidencing the phone calls been produced. Because this testimony would have placed Defendant at the Flying J as close as one minute before the robbery occurred, it suggests reasonable doubt that Defendant committed the robbery.

## CONCLUSION

¶ 26 Accordingly, we conclude that trial counsel provided ineffective assistance at Defendant's trial and that trial counsel's ineffective assistance prejudiced Defendant. As a result, we reverse and remand for a new trial.

¶ 27 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.